STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. HOWARD FARRELL, DEFENDANT-APPELLANT.

Argued May 22, 1972—Decided July 7, 1972.

*Mr. Philip S. Elberg,* Designated Attorney, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Philip S. Elberg,* Designated Attorney, of counsel and on the brief).

*Mr. Charles A. Cohen,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. A. Donald Bigley,* Prosecutor of Camden County, attorney).

The opinion of the Court was delivered by

PROCTOR, J. Defendant Farrell was convicted by a jury of robbery (*N. J. S. A.* 2A:141–1) while armed (*N. J. S. A.* 2A:151–5), and sentenced to a 14-15 year term for the robbery and a consecutive 4-5 year term for being armed. The conviction was sustained in an unreported opinion by the Appellate Division and we granted certification upon defendant's petition. 59 *N. J.* 289 (1971).

At the trial the only evidence linking the defendant with the robbery was the testimony of Harold Lutz, who had pleaded guilty to the same indictment but had not yet been sentenced. He said that while armed he robbed the cashier of a drive-in theater, taking about $200. He further testified the defendant suggested the robbery, provided the gun, drove him to and from the scene of the crime and split the money with him.

The primary contention on this appeal is that the prosecutor made improper remarks during summation which prejudiced the defendant. We agree.

It is error for a trial judge to permit a prosecutor in summing up to comment on facts not shown or reasonably inferable from the evidence in the case. *State v. Hill*, 47 N. J. 490, 499 (1966); *State v. Johnson*, 31 N. J. 489, 510 (1960); *State v. Bogen*, 13 N. J. 137, 140–141 (1953). During his summation the prosecutor made the following remarks:

> Farrell knew that Lutz had something to testify about. *Farrell knows it today and remember what he tried to do with the young kid when he was on the stand yesterday? While he was on the stand yesterday, did you look in the back of the court room and see those characters seated right in the back trying to intimidate that kid during his entire testimony. If they were interested in the case, and only one of them testified, where are they today. There is no Harold William Lutz here today to intimidate, but there was yesterday. Those four characters sat there during the whole trial and during Mr. Lutz' entire testimony and stared him down and intimidated him. If Mr. Lutz seemed scared, I think we can all understand why he was scared.* (Emphasis added.)

Other than this statement there was nothing in the record to indicate that the four men even existed.[1] These comments were the equivalent of testimony by the prosecutor that the defendant had procured the presence of these men for the

---

[1] If such spectators existed and behaved as the prosecutor alleged, the proper procedure to follow, as defense counsel pointed out at trial, would be to bring the matter to the court's attention.

purpose of intimidating a State witness and therefore was a party in an attempt to obstruct justice. They also had the tendency to enhance Lutz's believability in that he testified despite a forboding atmosphere.

■■ It is also error to permit the prosecutor to declare his personal belief of a defendant's guilt in such a manner that the jury may understand that belief to be based upon something which the prosecutor knows outside the evidence. *State v. Thornton,* 38 *N. J.* 380, 398 (1962). The prosecutor included the following in his summation:

Ladies and gentlemen of the jury, a lot of times during this case you have heard objections and I have seemed over zealous. Please do not hold that against me because I have a strong feeling about this case. *There is no question in my mind as to what happened on that night, and I have the responsibility,* not only to myself, but to my office and to each and every one of you seated in this jury and to each and every person that resides in this county and to each and every person that lives in this state; *because, a brutal crime was committed on that date and there is no question in my mind that Mr. Farrell had something to do with that crime.* So, if I have seemed to be over zealous, please don't hold that against me because as I have said, *I feel very strongly about this case.* If I seem youthful, please don't hold that against me. Please don't feel that I have no experience with people because although I may be youthful, during my tenure as assistant prosecutor, I have had an opportunity to try many, many cases. *I have tried at least fifty cases, not counting those that ended up in a plea, and I have seen many, many people and I can say now, that I don't think I have ever felt stronger about a case than I do about this one.*

\*      \*      \*      \*      \*      \*      \*      \*

Now, ladies and gentlemen of the jury, that's why I say to you *that I feel about this case like I have never felt before. There are very few cases where I have felt like I feel now.* I want to see justice done and I want to see this man convicted of a crime that he committed . . . . (Emphasis added.)

We are convinced such comments tended to create the impression that aside from the evidence presented to the jury, the prosecutor had personal knowledge of the defendant's guilt. We are not discussing a situation where the prosecutor argues that the jury should be persuaded that the State's evidence was credible. Here the prosecutor went beyond an

argumentative evaluation of the State's proof and sought to add to that proof some special expertise that he claimed in this area. After all, the simple question was whether Lutz was a believable witness. In this light the statements made by the prosecutor which we quoted above went beyond any discussion of the inherent worth of Lutz's testimony and sought to add strength to that testimony on the basis of the prosecutor's comparison of this case with others he had tried.

We think it clear the prosecutor in his summation disregarded the guidelines set forth in our cases cited above. It is apparent from the number of instances recently brought to our attention that improper comments by prosecutors are becoming much too prevalent. We remind prosecutors again, hopefully for the last time, of their function in the role of State's attorneys.[2] Canon 5[3] of the *Canons of Professional Ethics* sets forth this function: "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done." The canon summarizes Mr. Justice Sutherland's words in *Berger v. United States*, 295 *U. S.* 78, 88, 55 S. Ct. 629, 633, 79 *L. Ed.* 1314, 1321 (1935):

The * * * [prosecuting] Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at

[2]Prosecutors have been admonished by this Court for going beyond the bounds of proper summation on many occasions in the past. See, *e. g.*, *State v. Siciliano*, 21 *N. J.* 249, 262–263 (1956); *State v. D'Ippolito*, 19 *N. J.* 540, 543 (1955); *State v. Bogen*, 13 *N. J.* 137, 139 (1953).

[3]Now embodied in *DR* 7–106 (C).

liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

It was error to permit the prosecutor's remarks referred to above to remain and we are convinced the remarks were prejudicial to the defendant's rights. The State's case consisted entirely of the testimony of an alleged accomplice, Lutz, who had pleaded guilty to the offense but had not yet been sentenced at the time of the trial. There is no doubt in our minds that reference by the prosecutor to things not in the record which had the tendency to bolster Lutz's credibility and to show that Farrell attempted to obstruct justice was harmful to the defendant. What is a juror who did not notice the supposed spectators or the alleged intimidation of Lutz to think? As Mr. Justice Sutherland observed in *Berger,* cited above, because the prosecutor represents the government and people of the State, it is reasonable to say that jurors have confidence that he will fairly fulfil his duty to see that justice is done whether by conviction of the guilty or acquittal of the innocent. His comments in summation whether proper or improper carry with them the authority of all he represents. *State v. Johnson, supra* 31 *N. J.* at 511. It is unlikely a juror will believe a prosecutor would intentionally mislead him. Rather, he will probably accept the statement that Lutz had been threatened and that he testified truthfully in the face of that threat, and the implication that Farrell attempted to obstruct justice. The witness' credibility so bolstered and the alleged wrongful conduct of the defendant and his friends in the court room so emphasized, it is not much of a step for a juror to take to vote for a conviction.

Statements by the prosecutor of his personal belief aside from the evidence about defendant's guilt are also likely to have a damaging impact. Where those statements are repeatedly made as in this case the damage is compounded. The prosecutor here in effect told the jury he knew that Lutz was telling the truth and that Farrell was guilty, not on the basis of what was in the record but rather through his own expert evaluation of this case as compared with others he had tried. The jury was then put in a position where to acquit the defendant they had to believe the prosecutor was either exaggerating or fabricating. We do not think any juror can be expected to believe the prosecutor would do so and thus we cannot say the defendant was not prejudiced by the prosecutor's comments as to his private belief.

We hold the prosecutor's remarks referred to above were improper and prejudicial.

■■ The State contends defense counsel's failure to object during summation precludes defendant from raising on appeal the issue of improper summation. Ordinarily a defendant will not be heard to claim prejudice if defense counsel does not make a timely objection to improper remarks. *State v. Macon,* 57 *N. J.* 325, 333 (1971) ; *State v. Bogen, supra* 13 *N. J.* at 141–142. We think, however, that in the present case timely objection was made. While it is true the defendant did not literally object, immediately after the summation he moved for a mistrial on the basis of the prosecutor's improper remarks. The motion was tantamount to a timely objection, alerting the trial judge to the improprieties and giving him an opportunity to rectify the situation, if that were possible. The trial judge denied the motion and at that time did not instruct the jury on the prosecutor's comments. Although defense counsel did not request specific curative instructions, his motion for a mistrial pinpointed the improprieties contained in the prosecutor's summation and apprised the judge of the need for curative instructions, had the court felt a mistrial was not warranted but that the remarks were unfair.

■ Generally, a defendant will be barred from raising a claim of prejudice on appeal if the trial court orders that the remarks be stricken from the record and directs the jury to disregard them. *State v. Bogen, supra* at 142. Here the trial court did not do so. In the court's main charge, however, it did tell the jury to ignore statements by the court or either attorney not supported by the evidence. Such an instruction, commonly given in both criminal and civil cases, could not undo the harm done here. We do not suggest that no instruction could have eliminated the effect of the damaging remarks. We hold only the nature of the unfairness here was such that only a clear and precise instruction referring specifically to the improprieties and disapproving them could possibly have eliminated the harm already done to the defendant's rights.

■ In sentencing the defendant, the trial judge said he had reviewed the pre-sentence report. The report referred to several crimes for which defendant had been tried and acquitted. The report stated, "it seems that defendant's crimes are finally catching up to him." It must be remembered that unproved allegations of criminal conduct should not be considered by a sentencing judge. *People v. Riley,* 376 *Ill.* 364, 33 *N. E.* 2d 872, 134 *A. L. R.* 1261, *cert. denied,* 313 *U. S.* 586, 61 *S. Ct.* 1118, 85 *L. Ed.* 1542 (1941) ; *State v. Pohlabel,* 61 *N. J. Super.* 242, 250 (App. Div. 1960). However, we have no way of knowing whether the trial judge took the statement in the report into consideration in determining the length of the defendant's sentence. We presume, in absence of evidence to the contrary, the trial court disregarded the statements contained in the report as to prior arrests and acquittals of defendant. *State v. Pohlabel, supra* at 250. Indeed, the record shows that the court was primarily concerned with the evidence presented in this case and one prior conviction of the defendant.

The judgment of the Appellate Division is reversed and the case is remanded for a new trial.

108

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN.—7.

*For affirmance*—None.