706 A.2d 300

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. SALVATORE J. ORTISI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 22, 1998—Decided March 5, 1998.

574

Before Judges BAIME, WEFING and BRAITHWAITE.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Albert D. Barnes*, Designated Counsel, of counsel and on the brief).

*Peter Verniero*, Attorney General, attorney for respondent (*Linda A. Rinaldi*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

Following a jury trial, defendant was convicted of two counts of terroristic threats, *N.J.S.A.* 2C:12-3b (counts one and two); two counts of aggravated assault, *N.J.S.A.* 2C:12-1b(5)(a) (counts three and four); and one count of resisting arrest, *N.J.S.A.* 2C:29-2a(1) (count five). At sentencing, the judge merged count five with counts three and four and imposed concurrent probationary terms of five years with conditions, including 364 days incarceration in the Passaic County Jail.

Defendant now appeals and contends:

POINT I

THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE COURT REFUSED TO DIRECT TIMELY ASSIGNMENT OF COUNSEL THROUGH THE OFFICE OF THE PUBLIC DEFENDER OR BY PRO BONO ASSIGNMENT.

A. Court Improperly Denied Defendant's Continuing Motion for Assignment of Counsel.

B. Court Improperly Ruled that the Defendant had Waived his Right to Counsel.

C. Court Denied Defendant Effective Assistance of Counsel When It Failed to Appoint Standby Counsel in a Timely Manner. [Not Raised Below]

*POINT II*

THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUN-SEL, A MEANINGFUL TRIAL BY JURY AND DUE PROCESS OF LAW DURING TRIAL HELD IN HIS ABSENCE WHEN COURT–APPOINTED STANDBY COUNSEL FAILED TO INTERPOSE ANY DEFENSE AND WHEN THE TRIAL COURT FAILED TO COMPEL STANDBY COUNSEL'S ACTIVE PARTICIPATION IN THE TRIAL [Not Raised Below]

*POINT III*

PROSECUTORIAL MISCONDUCT DENIED THE DEFENDANT A FAIR TRIAL AND VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS AND PRIVILEGE AGAINST SELF INCRIMINATION. [Not Raised Below]

*POINT IV*

COUNTS ALLEGING TERRORISTIC THREATS SHOULD NOT HAVE BEEN SUBMITTED TO THE JURY. [Partially Raised Below]

A. Claimed Victims Never Testified They Even Knew That the Alleged Threats Had Been Made.

B. Directed Verdict Should have Been Entered on Counts Alleging Terroristic Threats Since the State's Evidence Conclusively Established That There Was No Belief in the Immediacy of the Alleged Threats or in the Likelihood that They Would Be Carried Out.

*POINT VI*

TRIAL COURT COMMITTED PLAIN ERROR IN THE SENTENCE IM-POSED ON THE DEFENDANT. [Not Raised Below]

In a Supplemental Brief defendant urges:

*POINT V*

SEARCH SHOULD BE SUPPRESSED SINCE JUDGE WHO ISSUED SEARCH WARRANT IMPROPERLY FAILED TO RECUSE HIMSELF FROM ISSUING SEARCH WARRANT. [Not Raised Below]

We reject defendant's contentions and affirm.

I

On September 9, 1992, Mary Guynn, an employee of the Appellate Division Clerk's office, received a telephone call from defendant who was inquiring about the status of an unrelated appeal. Guynn informed him that his brief was overdue and that the court

was prepared to dismiss his case for failure to file a brief. Defendant told Guynn that when the Appellate Division dismissed his case, he was

> gonna take the law into my own hands. I'm going to start serving Sal's law against all the assholes that have violated my rights and who have committed a crime against my person.... I'm taking all my tapes, all the transcripts I have and all the motion papers that I have; I am sending those out to the media so when Sal Ortisi starts doing all these bad negative things which on the surface would appear to be criminal in nature, everybody will know why I did, what I did....

He continued:

> I'm gonna go out and buy shotguns in New York State and 38[sic], 30's and 308's. I'm taking the law into my own hands now. I'm gonna start with those jackasses in the Prosecutor's Office, Fava and Murphy and that's who I'm gonna start with.... I'm not playing by the rules anymore. The Order is coming out next week; things are gonna start happening the week after that.

After the conversation, Guynn reported the incident to Emille Cox, the Appellate Division Clerk.

George Metzler, an investigator in the Passaic County Prosecutor's Office, was informed of the incident and was assigned to investigate. Metzler went to defendant's home, in Wayne, with two detectives from the Wayne police department, John Reardon and Edward Ruzicka. Defendant, who knew Metzler and Reardon from prior encounters, called them by name when they entered his home. Metzler told defendant that they had information that he made a telephone threat against Prosecutors Fava and Murphy. Defendant asked the investigators to accompany him upstairs to his bedroom, where they could speak without his parents hearing the conversation. In the bedroom, defendant admitted that he made the call and the threats. Metzler told him that if he made any more threats he would be arrested. Defendant informed the investigators that he taped the conversation, and asked if they would like to hear it. They agreed to hear the tape. Defendant sat in a chair at his desk and began rummaging through many cassette tapes in and around the desk. As he was looking for the tape, he again threatened to get a gun and "take care" of Fava and Murphy. Metzler then told defendant that he was under arrest for making terroristic threats. Defendant became upset and said that he would resist if they tried to handcuff him. He

then lunged from his chair, yelled something in Italian, and attacked Reardon, tackling him to the bed. After Reardon pinned back defendant's hands, defendant bit Reardon on the left shoulder. Metzler was also injured in the scuffle. Defendant was handcuffed. On the way out of the house, he apologized to Reardon, saying that he "just wanted to make this case stick." Both Reardon and Metzler received medical treatment for their injuries.

Because defendant never produced the tape containing the threat, Metzler applied for a search warrant, which was issued by the Wayne Municipal Court Judge. Metzler and several other law enforcement officials searched defendant's home and recovered the tape containing the threat. It was played for the jury during trial.

After many pre-trial proceedings, the trial judge ruled that defendant had knowingly and voluntarily waived his right to counsel and elected to proceed *pro se.* The judge appointed standby counsel to assist defendant. Defendant participated in selecting the jury, after which he expressed his satisfaction with the panel. He also pre-marked exhibits, participated in a motion to suppress and a hearing pursuant to *State v. Driver,* 38 *N.J.* 255, 183 *A.*2d 655 (1962). Thereafter, defendant announced that he was not going to participate "in this mockery of justice any further." He advised the judge that he would not make an opening or closing statement, nor would he present any witnesses. He told the judge that he was taking this position to protect his "right to counsel of choice." Defendant further told the judge that the things he had done were not done willingly, but out of necessity "because the attorneys, the members of the New Jersey Bar that the court has assigned to me had absolutely no regards for the Code of Ethics of the field, of their occupation."

After advising the judge that he would not participate, defendant said the following about his standby counsel:

For the record, I just want to indicate[,] I want to make it clear that Mr. Soto has been assigned to me by the Court simply to advise and in my absence to record

notes, but should the prosecutor in my absence ask questions that would be objectionable by the defense normally, that Mr. Soto will not raise objections, that he won't do anything other than record notes for me. He won't cross-examine witnesses or anything like that.

He then left court, and did not participate in his trial.

## II

In his first point, defendant claims that he was denied effective assistance of counsel when the judge improperly denied his motion for assignment of counsel, improperly ruled that he had waived his right to counsel, and failed to appoint standby counsel in a timely manner. We disagree.

Defendant's history with various counsel was long and tortuous. Shortly after he was arrested, he appeared with private counsel at a bail motion. When defendant appeared for his arraignment in January 1993, he told the judge that he had dismissed his private counsel because he could not afford his services and that he intended to proceed *pro se*. The judge "strongly suggested" that defendant make an application for a public defender, then set a trial date for March 29. On March 29, defendant appeared and said he would proceed *pro se*. The trial, however, was adjourned.

In December 1993, defendant appeared with John Schadegg, an Assistant Public Defender, who advised the judge that defendant was proceeding *pro se*, but that Schadegg had been assigned to advise him. Defendant told the judge that he was familiar with the facts and law of the case, the rules governing the courts, and the Rules of Evidence. The judge read the indictment to him and explained the prison term exposure on each count. Defendant stated that he had previously represented himself in municipal court and the Chancery Division. Additionally, he recognized that if he took the stand "things would get tricky" and that he would "have to separate testimony from argument."

In February 1994, defendant appeared with Schadegg, initially claiming he was appearing *pro se*, but ultimately calling Schadegg his "public defender." He also mentioned that previously he had been represented by another Public Defender, Peter Collier, but

Collier was discharged because he did not follow defendant's wishes.

On July 5, 1994, defendant advised the judge that he discharged Schadegg on June 15, because Schadegg had used an obscenity when defendant requested that he make a motion to suppress. He then informed the judge that whether or not he represented himself depended on the outcome of his suppression motion. Schadegg maintained that defendant had always been *pro se* and that the Public Defender's office represented him only on that basis. Defendant told the judge that he and Schadegg had "gone over the issues in the case on more than one occasion, I'm telling him to do this, he's telling me no, I'm not going to do this." At the end of the appearance, defendant told the judge that he was releasing the Public Defender's office from representing him and further releasing them from their status as "legal advisers if he goes *pro se* at trial."

On July 15, defendant appeared *pro se* on a bail reduction motion. He told the judge he still wanted to have assigned counsel from the Public Defender's office, but he did not want either Collier or Schadegg. The judge told him to appear on August 1, 1994 and further stated:

> Now, I will do one further thing with respect to counsel, you're coming back here on August 1st in the afternoon, on August 1st in the afternoon I will get and talk to the Office of the Public Defender and see whether or not their policy, what it is or whether they can assign outside counsel, what they can do. If they do not, if they will not assign other counsel and you are unhappy with that, you can appeal that to the Appellate Division. I can't force them to do what they won't do.

On August 1, the judge heard defendant's motion for assignment of counsel. He told the judge he did not want to be represented by the Public Defender's office because it did not recognize his "federally protected right of counsel of choice," or his right to a speedy trial, and assigned counsel and he disagreed on how to handle the case. The judge told defendant that he could not order the Public Defender's office to keep assigning someone to defendant until he got an attorney with whom he felt compatible. The judge ruled that since the Public Defender's

office had supplied counsel who was ready, willing and able to represent defendant, he received what he was entitled to. The judge advised defendant of his right to appeal the decision. Although defendant indicated that he intended to file an interlocutory appeal, he did not do so.

On October 3, 1994, defendant appeared *pro se* and requested a "try or dismiss date," which was granted. The assigned date was January 9, 1995.

On November 4, 1994, defendant told the judge that he had been through three public defenders, and he wanted counsel to be assigned from outside the Public Defender's office. A representative of the Public Defender's office explained that because defendant had dismissed Schadegg, he had dismissed the entire Public Defender's office, and if he wished to have counsel assigned to him, he had to make another application. The court advised defendant that if he wanted counsel, he should apply that day, as the January 9 trial date was a "try or dismiss date."

On January 9, 1995, defendant appeared *pro se* and told the judge he was ready to proceed to trial. Judge Reenstra told defendant that he had taken it upon himself, through the Public Defender, to employ outside counsel to assist in the trial. Defendant asked for a thirty-day postponement in order to confer with appointed counsel, Franklin Soto. The judge denied his request, citing the "try or dismiss order." After defendant met with Soto, defendant asked for a ninety-day postponement in order to allow Soto to represent him.

The judge reviewed the history of defendant's counsel situation, and the rights of defendants to be represented by counsel. The judge noted that defendant did not know that standby counsel had been appointed and therefore defendant appeared ready to proceed *pro se* with the trial. Given the history of the case and defendant's failure to seek counsel from October 10 until the date of the trial, January 9, the judge refused to grant an adjournment. The judge reiterated that Soto would be there throughout the trial

and defendant had the right to confer with him any time he wished.

Defendant appeared throughout jury selection, the pre-marking of exhibits, and two pre-trial motions. The judge noted that defendant had conducted himself "competently and expeditiously." The judge also found the defendant had "extensive experience in conducting himself in a criminal court." Noting that he had read the briefs and heard the arguments set forth by defendant, the judge found defendant to be "articulate," "intelligent" and "knowledgeable of the law." Defendant had a "much better than average working knowledge of the court rules, the Rules of Evidence and criminal procedure. His points that were raised were relevant, basically on point and his arguments supported his cited sources." The judge concluded that defendant was "capable of presenting his defense in a competent and professional manner."

Defendant told the judge that he "never, never ever waived legal representation." He further stated that he intended to raise that as an issue on appeal. He said that he was "going through this *pro se* not because I want to, because I want to get it over with." The judge again stated his reasons for denying defendant's request for counsel. The judge noted that defendant's manipulation of the system was another reason to deny his request.

After a break, defendant announced that he was not going to participate "in this mockery of justice." He advised the court that he was not going to make any opening or closing statements, present any witnesses, or cross-examine any witnesses. He said he made this decision to protect his right to counsel of his choice. He said that the things he had done were not done willingly, but out of necessity due to the inferior counsel appointed to him.

Soto, the standby counsel, informed the judge that he had advised defendant that he would not waive his right to appeal on that issue if he stayed and participated in the trial. The judge told defendant he was delaying the trial until 1:30 p.m. the following afternoon to give defendant a chance to seek emergent relief in the Appellate Division. Defendant told the judge there

was no need to delay the trial because he had no intention of appealing. Nevertheless, the judge allowed him the opportunity to appeal. The next day, defendant advised the judge that he intended to stick with his decision not to participate at trial. The judge explained, step-by-step, how the trial would proceed. Defendant stated that he understood that Soto would take notes but that he would not make objections or cross-examine witnesses.

## A

The Sixth Amendment of the United States Constitution and article 1, paragraph 10 of the New Jersey Constitution guarantee a criminal defendant the right to counsel at trial. The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, ... and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defense.

The New Jersey Constitution is virtually identical.

Defendants also have the right to dispense with counsel and to proceed *pro se. Faretta v. California,* 422 *U.S.* 806, 95 *S.Ct.* 2525, 45 *L. Ed.*2d 562 (1975). A defendant can exercise the right to self-representation only by first knowingly and intelligently waiving his right to counsel. *McKaskle v. Wiggins,* 465 *U.S.* 168, 173, 104 *S.Ct.* 944, 948, 79 *L. Ed.*2d 122, 130 (1984); *State v. Crisafi,* 128 *N.J.* 499, 509, 608 *A.*2d 317 (1992). However, because of the importance of trial counsel to the criminal justice process, the courts must indulge in every reasonable presumption against waiver. *State v. Gallagher,* 274 *N.J.Super.* 285, 295, 644 *A.*2d 103 (App.Div.1994).

In *Crisafi,* our Supreme Court set forth the areas of inquiry that a trial judge must explore to determine whether a defendant has made a knowing and voluntary waiver. The defendant should be advised of the: (1) dangers and disadvantages of self-representation; (2) nature of the charges against him, the

statutory defenses to those charges, and the possible range of punishment; (3) technical problems he may encounter in acting as his own counsel and of the risks he takes if the defense is unsuccessful; (4) necessity that he conduct his defense in accordance with the relevant rules of criminal procedure and evidence, that a lack of knowledge of the law may impair his ability to defend himself, and that his dual role as attorney and accused might hamper the effectiveness of his defense; and (5) difficulties in acting as his own counsel and the court should specifically advise the defendant that it would be unwise not to accept the assistance of counsel. *Crisafi, supra,* 128 *N.J.* at 510–12, 608 *A.*2d 317. "The purpose of giving a defendant an extensive warning is to ensure that he or she understands the consequences of the waiver," and thus, "the ultimate focus must be on the defendant's actual understanding of the waiver of counsel," not just the judge's strict compliance with the requirements. *Id.* at 512, 608 *A.*2d 317.

A defendant cannot be permitted to "manipulate the system by wavering between assigned counsel and self-representation...." *Id.* at 517–18, 608 *A.*2d 317. When the alternative is representation by the Public Defender, choosing to proceed *pro se* constitutes a voluntary waiver of counsel. *Id.* at 517, 608 *A.*2d 317. A defendant does not enjoy an unencumbered right to counsel of his or her choice. *Ibid.* A defendant also does not have a right to counsel who will blindly follow his instructions. *Ibid.* A defendant may substitute counsel for good cause, but a disagreement over trial strategy does not rise to the level of good cause. *State v. Buhl,* 269 *N.J.Super.* 344, 362, 635 *A.*2d 562 (App.Div.) (citations omitted), *certif. denied,* 135 *N.J.* 468, 640 *A.*2d 850 (1994). The determination of whether the motion for substitution of counsel should be granted is within the discretion of the trial judge and the judge is entitled to take into account the countervailing state interest in proceeding on schedule. *See Morris v. Slappy,* 461 *U.S.* 1, 13, 103 *S.Ct.* 1610, 1617, 75 *L.Ed.*2d 610, 620–21 (1983).

The defendant in *Crisafi* is much like the defendant here. Crisafi was experienced in court proceedings, and "fully appreciated the risks of proceeding without counsel." *Crisafi, supra,* 128 *N.J.* at 513, 608 *A.*2d 317. His background and experience supported the conclusion that he knew the difficulty of trying his own case. *Ibid.* He sought to manipulate the system by wavering between assigned counsel and self-representation and "by asserting violations of his right to counsel while rejecting every attorney assigned to his case." *Id.* at 517, 608 *A.*2d 317. For these reasons, the Court found that the defendant had knowingly and voluntarily waived his right to counsel, despite the fact that the judge "failed to inform defendant of the charges against him, the sentencing alternatives, and the specific pitfalls of proceeding *pro se.*" *Id.* at 515, 608 *A.*2d 317.

To determine whether defendant knowingly and voluntarily waived his right to counsel, the *Crisafi* factors must be explored. Defendant advised the judge that he had previously represented himself in municipal court and in the Chancery Division. Defendant also informed the judge that he was familiar with the court rules and the Rules of Evidence. Defendant understood that he would have to separate testimony from argument if he took the stand and that it could get "tricky." The judge advised him that he would be responsible for the same conduct as a lawyer. The judge also told him that he would "be far better off with the assistance of a trained criminal defense attorney than [he] would be by representing [himself]." In fact, the judge "urge[d] him not to represent [him]self." Defendant also told the judge that he was familiar with the adage, "A person who represents himself has a fool for a client."

In December 1993 the judge read the charges to defendant and explained the prison-term exposure on each count. The State concedes that the judge did not review the statutory defenses to the charges, but claims that the record amply demonstrates that defendant was well aware of those defenses because disagree-

ments between defendant and his various assigned counsel led to their discharge by defendant. We agree.

In 1994 Schadegg told the judge that he and defendant had "many, many discussions about what is [sic] intelligent ways to proceed with trial," and that he and defendant "had many disagreements." At the outset of Soto's assistance he told the judge that he and defendant "were not in agreement as how to proceed in this case" and that they did not see "eye to eye on how to handle this matter. He has a certain way that he wants this case to go." Defendant told the judge that at one point, he thought that perhaps he "didn't understand the defense of the alibi" but "Mr. Soto and a few others have explained it to me."

We conclude that all of the *Crisafi* factors were satisfied. Given defendant's history and familiarity with the legal system, his admitted and demonstrated knowledge throughout the pretrial proceedings, his responses to the various warnings given to him about the dangers and pitfalls of representing himself, and his continued unwillingness to work with the counsel provided to him despite the judge's insistence that the choice was the Public Defender's office or *pro se* representation, we do not believe that the judge abused his discretion when he found that defendant knowingly and voluntarily waived his right to counsel.

Defendant also claims that the judge improperly denied his continuing motion for counsel outside of the Public Defender's office. This argument is without merit. *R.* 2:11-3(e)(2). Defendant was provided with three different attorneys from the Public Defender's office, and found fault with each one. He offers no authority for the right to be represented by someone outside the Public Defender's office. Given that a defendant is not entitled to counsel of his choice, nor one who will blindly apply his trial strategy, defendant had no alternative but to accept the attorney assigned from the Public Defender's Office or proceed *pro se.* That choice did not deny him of any constitutionally protected right. *Crisafi, supra,* 128 *N.J.* at 517, 608 *A.*2d 317.

In a point that was not raised below, defendant argues that he was denied effective assistance of counsel when his standby counsel was not appointed until the week before trial, and defendant did not have the chance to confer with him until the day of the trial. Defendant offers no authority for his contention that counsel should have been appointed sooner. Standby counsel is appointed for two main purposes: to act as a "safety net" to insure that the litigant receives a fair hearing and to allow the trial to proceed without the undue delays likely to arise when a layperson represents his own case. *United States v. Bertoli*, 994 *F.*2d 1002, 1018–19 (3d Cir.1993). Neither of these reasons requires an early appointment. Had Soto been appointed two months earlier, he could not have done anything to aid defendant, as he was there only to guide defendant during trial and not to represent him. We find no merit to defendant's argument. *R.* 2:11–3(e)(2).

## B

Defendant next contends that by permitting the trial to proceed without requiring standby counsel to defend, the judge denied him effective assistance of counsel, a meaningful trial by jury, and due process of law. The State responds that defendant ordered standby counsel not to participate in the trial, and thus defendant should not be heard to complain. We conclude that defendant's contentions are without merit, *R.* 2:11–3(e)(2), and that his reliance on *State v. Wiggins*, 158 *N.J.Super.* 27, 385 *A.*2d 318 (App.Div.1978), and *State v. McCombs*, 81 *N.J.* 373, 408 *A.*2d 425 (1979), is misplaced.

After defendant advised the judge that he would not be participating at trial, he said:

> For the record, I just want to indicate[,] I want to make it clear that Mr. Soto has been assigned to me by the Court simply to advise and in my absence to record notes, but should the prosecutor in my absence ask questions that would be objectionable by the defense normally, that Mr. Soto will not raise objections, that he won't do anything other than record notes for me. He won't cross-examine witnesses or anything like that.

Here, unlike *Wiggins* and *McCombs,* defendant waived his right to counsel and elected to proceed *pro se.* Further, during his *pro se* representation he made certain decisions, such as voluntarily absenting himself from trial and instructing his standby counsel only to take notes. When a defendant elects to represent himself, he cannot assert that his representation amounts to ineffective assistance of counsel. *Faretta v. California, supra,* 422 *U.S.* at 834 n. 46, 95 *S.Ct.* at 2541 n. 46, 45 *L. Ed.*2d at 581 n. 46 (1975).

Moreover, although defendant told standby counsel to only take notes, counsel did more. He objected to the admission into evidence of the tape containing the threat, which required a hearing. Further, when questioned by the judge on the admissibility of a certain exhibit, he considered the issue and responded to the judge. Counsel also requested and obtained an instruction that the jury not draw any adverse inference from defendant's absence from the trial.

Defendant was repeatedly advised of his options. He deliberately manipulated the judge trying to gain an advantage. He persisted in absenting himself from trial when he knew he had a right to be there, and instructed standby counsel to do nothing on his behalf but take notes. We are satisfied that it was defendant's intent to challenge whatever the judge did. If the judge had ordered standby counsel to participate, defendant would be urging that the judge's order, contradicting his instructions was error. He cannot have it both ways. Defendant did everything he could to make the orderly proceeding of this trial next to impossible. He knew what he was doing when he made the choice to proceed *pro se,* voluntarily absented himself from the trial, and instructed his standby counsel not to participate. To reward him for his manipulative behavior would encourage other defendants to engage in similar conduct, thereby causing disruptions in the trial process.

Although we are satisfied that defendant voluntarily waived his right to counsel, and deliberately told standby counsel not to

participate in the trial, we must also consider the integrity of the trial process. As we noted in *Wiggins, supra,*

> In every trial there is more at stake than just the interests of the accused; the integrity of the process warrants a trial judge's exercising his discretion to have counsel participate in the defense even when rejected. A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself.
>
> [*Wiggins, supra,* 158 *N.J.Super.* at 32, 385 *A.*2d 318 (quoting *Mayberry v. Pennsylvania,* 400 *U.S.* 455, 467–68, 91 *S.Ct.* 499 [505–06], 27 *L.Ed.*2d 532 (1971)).]

Here, we conclude that the integrity of the trial process was preserved. Defendant was present and participated in jury selection and certain pre-trial proceedings. After he absented himself, he instructed standby counsel to do nothing but take notes. Despite that admonition, counsel objected when he believed it was appropriate, and made requests on defendant's behalf. This was not a long or complicated factual trial necessitating much intervention. This was unlike *Wiggins,* where counsel did nothing on defendant's behalf.

Additionally, the judge was cognizant of protecting defendant's rights throughout the trial. At one point, the judge objected to a question posed by the prosecutor on the basis of relevance, and the prosecutor withdrew the question. The judge also denied admission of evidence proffered by the State, despite counsel's following defendant's instructions not to object to the admission of any evidence.

Based on standby counsel's interventions, and the judge's obvious protection of defendant's rights, we are satisfied that the integrity of the trial process was preserved. We therefore find no basis to conclude that defendant was denied effective assistance of counsel.

## III

In point III, defendant contends that he was deprived of a fair trial when the prosecutor made improper comments during his

summation. After thanking the jury for their participation in the trial, the prosecutor continued:

> Ladies and gentlemen, I know some of you have served on a jury before and certainly had a basis to expect how a trial would be conducted and I'm sure all the rest of you also might have an idea what you might expect this past week and I'm sure what you saw this past week did not meet to your expectations.
>
> Now, Judge Reenstra has told you at the very beginning and I'm sure he's going to tell you again that a defendant, as we all know, has a right through an attorney to represent him and of course has a right to be present in court to confront the witnesses against him. That's a right the defendant has. And if he chooses to waive that right by instructing his attorney not to do anything or walking out of the courtroom, well, that's his privilege. As odd as that may be, that's his privilege, and you're not to hold the defendant against—hold that against him.
>
> But let me just submit to you very briefly why I think the defendant conducted himself this way. I know you've heard the evidence and I know when you go back in the jury room you're going to weigh that evidence And return a verdict that you feel is right. And I recognize, of course, you're the jury, you have a right to disagree with me as to the ultimate conclusion, but just try and be frank and candid with reasonable people. The evidence against the defendant is absolutely overwhelmingly [sic] and I think the defendant decided not to be in court because if I'm not here the State can't proceed.
>
> And you could see how we can't allow that, because any defendant who is guilty beyond a reasonable doubt against whom the evidence is overwhelming could simply say I'm not going to conduct the defense. I'm not even going to bother showing up. The State can't prove me [sic] and that man will never be held accountable for his conduct. And clearly that's not justice.
>
> The defendant has rights, of course. They're very valuable, but the State has an obligation to pursue criminal charges in a court of law.

Defendant did not object to the summation. "Therefore, to warrant a reversal such remarks must constitute plain error—that is, they must so grievously affect the substantial rights of the defendant as to convince [the court] that they possessed a clear capacity to bring about an unjust result." *State v. Hipplewith,* 33 *N.J.* 300, 309, 164 *A.*2d 481 (1960) (citation omitted). Counsel's failure to make an objection creates an inference that he or she did not find the prosecutor's remarks prejudicial. *State v. Irving,* 114 *N.J.* 427, 444, 555 *A.*2d 575 (1989). Here, however, standby counsel was instructed not to make any objections.

"The prosecutor is entitled to sum up the State's case graphically and forcefully as long as his argument is confined to facts in evidence or upon the reasonable inferences therefrom." *State v. Hill,* 47 *N.J.* 490, 499, 221 *A.*2d 725 (1966). Particular remarks during the summation must be evaluated in the setting of the entire trial. *State v. Johnson,* 216 *N.J.Super.* 588, 610, 524 *A.*2d 826 (App.Div.1987). "Prosecutorial misconduct is not ground for reversal of a criminal conviction unless the conduct was so egregious that it deprived defendant of a fair trial." *State v. Ramseur,* 106 *N.J.* 123, 322, 524 *A.*2d 188 (1987) (citations omitted), *cert. denied,* 508 *U.S.* 947, 113 *S.Ct.* 2433, 124 *L. Ed.*2d 653 (1993).

Defendant first argues that the prosecutor improperly stated his personal belief and opinion that defendant was guilty when he said, "You're the jury, you have the right to disagree with me as to the ultimate conclusion, but just try and be frank and candid with reasonable people. The evidence against the defendant is absolutely overwhelmingly [sic] and I think the defendant decided not to be in court because if I'm not here the State can't proceed." Defendant argues that the comments are improper under *State v. Farrell,* 61 *N.J.* 99, 293 *A.*2d 176 (1972), and *State v. Hinds,* 278 *N.J.Super.* 1, 650 *A.*2d 350 (App.Div.1994), *rev'd on other grounds,* 143 *N.J.* 540, 674 *A.*2d 161 (1996).

The Supreme Court in *Farrell, supra,* 61 *N.J.* at 103, 293 *A.*2d 176, stated that it was "error to permit the prosecutor to declare his personal belief of a defendant's guilt in such a manner that the jury may understand that belief to be based upon something which the prosecutor knows outside the evidence." That sentiment was echoed in *Hinds, supra,* 278 *N.J.Super.* at 18, 650 *A.*2d 350. Here, the prosecutor's comments did not rise to the level prohibited in *Farrell* and *Hinds.* The prosecutor did not intimate that he knew defendant was guilty based on some evidence unknown to the jury.

Next, defendant asserts that certain remarks asked the jury to draw an inference of guilt from his exercise of his right not

to be present or to conduct a defense. The prosecutor said that defendant's non-appearance at trial could not be held against him, but then told the jury: "Let me submit to you very briefly why I think the defendant conducted himself this way." He then made the above comment that the evidence was so overwhelming that defendant chose not to be in court in the hopes that the trial could not proceed. The prosecutor continued, saying that such behavior could not be allowed or else

> any defendant who is guilty beyond a reasonable doubt against whom the evidence is overwhelming could simply say I'm not going to conduct the defense. I'm not even going to bother showing up. The State can't prove me and that man will never be held accountable for his conduct [sic]. And clearly that's not justice.

The State concedes that the prosecutor's comment was improper, but argues that "when the prosecutor's summation as a whole is reviewed, and considered in context with the entire trial, there is no doubt the brief comment on defendant's absence at the very beginning of the summation in no way diverted the jurors' attention from a fair assessment of the evidence." The State argues that the jury needed "some kind of explanation for defendant's absence," and by "briefly commenting on defendant's absence, the prosecutor was able to put to rest a juror's natural inclination to speculate on why defendant was not present after jury selection."

We agree with the State and conclude that any error was harmless beyond a reasonable doubt, *State v. Macon*, 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971), and was not "clearly capable of producing an unjust result." *R.* 2:10–2. Perhaps the prosecutor's phraseology could have been more clear. This brief comment at the beginning of the prosecutor's summation, however, did not have the capacity to prejudice the jury against defendant. Further, the judge instructed the jury that defendant had the right to remain silent, the right not to testify or present a defense, and further that it could not draw any inference from defendant's failure to participate at trial. There is nothing in this record from which we could conclude that the jury did not follow these instructions. *State v. Manley*, 54 *N.J.* 259, 271, 255 *A.*2d 193 (1969).

## IV

██ Defendant next argues that a judgment of acquittal on both terroristic threat charges should have been entered because the State failed to produce evidence that the victims actually knew the content of the threats or even that the threats had been made. We need not dwell on this point at length, but simply observe that the State's evidence was sufficient to allow the jury to draw the inference that both victims were aware of the threats made by defendant.

Here, after defendant was arrested, Metzler met with Detective James Gannon of the Morris County Prosecutor's Office and, at his request, gave him a photograph of defendant. Metzler also spoke with a detective assigned to a special investigative unit at the New Jersey State Police that investigates threats made to judges and prosecutors throughout the State. Metzler also testified that he "distributed photographs of Mr. Ortisi throughout the Prosecutor's Office" "so that the staff would be aware that if Mr. Ortisi was to come to the Prosecutor's Office that he had threatened the prosecutor and to use extra caution."

> A jury may draw an inference from a fact whenever it is more probable than not that the inference is true; the veracity of each inference need not be established beyond a reasonable doubt in order for the jury to draw the inference. Nevertheless, the State's right to the benefit of reasonable inferences should not be used to shift or lighten the burden of proof, or become a bootstrap to reduce the State's burden of establishing the essential elements of the offense charged beyond a reasonable doubt.

> [*State v. Brown*, 80 *N.J.* 587, 592, 404 *A.*2d 1111 (1979) (citations omitted).]

We are satisfied that the evidence would permit a jury to infer that both victims were aware of defendant's threats. We find it inconceivable that Metzler, Gannon, and the State Police detective did not advise the victims of defendant's threats. We leave for another day the issue of whether victims must be made aware of the threat because here the inference was highly probable and supported by the evidence.

## V

Defendant's arguments concerning his sentence and the search warrant are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(2).

Affirmed.