**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2807-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BARRY M. CRUDUP,
a/k/a WHITE BOY,
and LIVE,

     Defendant-Appellant.

_____

Submitted September 19, 2023 – Decided December 8, 2023

Before Judges Sumners and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 13-06-0118.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Timothy Denny, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Steven K. Cuttonaro, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

A jury found defendant Barry M. Crudup guilty of weapons offenses—ranging from second- to fourth-degrees—arising from a New Jersey State Police sting operation targeting illegal gun sales. The State's case was supported by a sole eyewitness, Tyree Mims—a gun dealer turned paid confidential informant (CI)—who after sales to defendant was placed in witness protection due to unrelated shootings. Defendant was sentenced to an aggregate ten-year prison term inclusive of two consecutive prison terms, subject to a six-year period of parole ineligibility.

Defendant appeals, arguing:

POINT I

THE PROSECUTOR COMMITTED REVERSIBLE MISCONDUCT WHEN SHE MADE INCULPATORY STATEMENTS UNSUPPORTED BY THE RECORD IN HER SUMMATION IMPLYING THAT THE DEFENDANT WAS RESPONSIBLE FOR SHOOTING AT THE STATE'S CRITICAL WITNESS, AND BY BOLSTERING THE WITNESS[]'S CREDIBILITY. (Not Raised Below).

A. THE PROSECUTOR MADE INCULPATORY STATEMENTS THAT WERE UNSUPPORTED BY THE RECORD.

B. THE PROSECUTOR IMPROPERLY BOLSTERED THE MAIN WITNESSES' CREDIBILITY.

2

C. THESE IMPROPER ARGUMENTS, BOTH INDIVIDUALLY AND TOGETHER, DEPRIVED THE DEFENDANT OF A FAIR TRIAL AND NECESSITATE REVERSAL OF HIS CONVICTIONS.

POINT II

THE TRIAL COURT ERRED WHEN IT SENTENCED [DEFENDANT] TO CONSECUTIVE SENTENCES BECAUSE IT DID NOT CONSIDER THE OVERALL FAIRNESS OF THE SENTENCE.

Our decision yields mixed results. We affirm defendant's conviction as no unjust result occurred due to the prosecutor's summation comments about Mims' shootings. The jury was instructed several times that defendant was neither charged nor involved with the shooting and that Mims' relocation as a CI was not attributable to defendant. We reverse and remand because—as the State concedes—the trial court must explain why it was fair to impose consecutive sentences in accordance with State v. Torres, 246 N.J. 246 (2021).

I.

We limit our discussion of the record to the facts and statements relevant to this appeal.

A State Police investigation employed Mims to stem illegal gun sales in the Trenton area. As part of his CI arrangement, Mims was paid $100 for every gun he successfully purchased for the State Police (earning $1,700 over a seven-

3

month period); received money for household necessities and phone bills; and was removed from the Sex Offender Internet Registry.

The primary target of the investigation was Gary Spears. Defendant, however, got entangled in the investigation by making two sales to Mims.

Mims had arranged to buy guns from Michael Gyampo (Nep). The State Police had Mims wear a recording device during the transaction and gave him money for the purchase. Mims testified he purchased a rifle from Nep and defendant, whom he called "White Boy," and gave it to the State Police.

Two months later, Mims set up another buy with defendant. Again, the State Police had Mims wear a recording device and gave him money for the purchase. Mims testified he bought a handgun from defendant and gave it to the State Police.

A subsequent purchase, not involving defendant, resulted in the seller shooting at Mims in a robbery attempt. After another unsuccessful buy led to Mims being shot at, he was placed in a witness relocation program.

The only evidence of defendant selling guns was Mims' testimony. The State Police did not produce any investigation notes; policies at the time did not require documentation of text messages or phone conversations. Additionally,

the State Police did not test the guns for DNA or fingerprints and did not take pictures or video surveillance of the buys.

The jury found defendant guilty of all offenses charged. After merger, defendant was sentenced to an aggregate ten-year prison term, subject to a six-year period of parole ineligibility, based on consecutive terms of : (1) five years for second-degree conspiracy to unlawfully possess a weapon, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:58-5 ; second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c)(2); and third-degree unlawful disposition of an assault firearm, N.J.S.A. 2C:39-9(g); and (2) five years for second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b); and fourth-degree unlawful disposition of weapons, N.J.S.A. 2C:39-9(d). In addition, defendant was sentenced to a concurrent term of eighteen months for fourth-degree possession of a prohibited weapon, N.J.S.A. 2C:39-3(d), and fourth-degree disposition of a prohibited weapon, N.J.S.A. 2C:39-9(e).

II.

Defendant asserts his rights to due process and a fair trial under U.S. Const. amends. VI, XIV and N.J. Const. art. I, ¶¶ 1, 10 were violated, warranting reversal of his conviction due to prosecutorial misconduct—summation

comments: (1) implying—without factual support—defendant was involved in the Mims' shooting; and (2) improperly buttressing Mims' credibility. We disagree.

A. Shooting Testimony

During summation, the prosecutor emphasized Mims' testimony identifying defendant as a gun dealer and explained the lack of any forensic or documentary evidence of defendant's possession of guns or sale to Mims of guns. The prosecutor argued:

> You can't sit there and take a video. That would be great, but it's not reality. It can't happen in these cases. It would compromise the investigation and as you're very well aware, Mr. Mims risked getting shot. He was shot at twice. He was shot at twice in this case.

Defense counsel did not object.

The prosecutor's remarks were not "'clearly and unmistakably improper,' and [did not] substantially prejudice[] defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Smith, 167 N.J. 158, 181-82 (2001) (quoting State v. Timmendequas, 161 N.J. 515, 575 (1999)). And given the absence of an objection, defendant had to establish the remarks constituted plain error, State v. Feal, 194 N.J. 293, 312 (2008), meaning they were not "clearly capable of producing an unjust result," R. 2:10-2.

A-2807-20

The trial judge instructed the jury on five different occasions that defendant was neither charged nor associated with the shootings, and that Mims' relocation could not—and should not—be attributed to defendant. See Timmendequas, 161 N.J. at 575 (concluding there was no reversible error when jurors did not rely "on their suspicions of [the] defendant's prior convictions in reaching their decisions"). The substance of the instructions was firm, clear, and effective. See State v. Vallejo, 198 N.J. 122, 134 (2009). We assume the jury followed the instructions, State v. Loftin, 146 N.J. 295, 367 (1996) (citation omitted), and defendant has not provided any indication to the contrary.

The prosecutor did not argue facts not in evidence. See State v. Farrell, 61 N.J. 99, 102-03 (1972) (warning that summation comments cannot serve as "the equivalent of testimony by the prosecutor"). In his merits brief, defendant admits the shootings were brought up by his cross-examination of Mims to show his continuing financial interest in cooperating with State Police. So, in presenting the shootings to the jury, defendant has no basis to argue the prosecutor could not refer to them during summation. See State v. Munoz, 340 N.J. Super. 204, 216 (App. Div. 2001).

The prosecutor's comments did not "transform[] the case against [defendant] from one about selling guns to one about attempting to kill Mims,"

as defendant argues. Defendant correctly maintains there was no evidence he was aware Mims was a CI and retaliated by shooting Mims. The record, however, shows the trial was focused on Mims' allegations that defendant sold him guns on two separate occasions.

The prosecutor's summation regarding the shootings were fair comment on how dangerous the gun buys were, and therefore they could not be videotaped, leaving Mims as the State's sole witness to the transactions. The buys were audio recorded, which confirmed Mims' testimony that defendant sold him the guns. The summation accordingly relied on facts in evidence.

B. Mims' Credibility

Defendant argues the prosecutor's comments about Mims' shootings improperly bolstered Mims' credibility to the jury and warrants reversal of his conviction. Because none of the comments were objected to, we review them under the lens of plain error. Feal, 194 N.J. at 312.

The prosecutor reinforced Mims' testimony that defendant was the person who sold him guns, saying this accusation was consistent before and after the shootings. Defendant asserts the prosecutor invited the jury to speculate about what would have happened to Mims if it had been known he was a CI buying guns. The prosecutor stated: "People didn't even know he was buying guns for

the State Police[,] and he still got shot at.  Can you imagine what would have happened if he told them?"  Defendant, citing State v. W.L., 278 N.J. Super. 295, 301 (App. Div. 1995), argues the prosecutor's unsupported comments had the "capacity to unfairly bolster the State's case and lead the jury to convict," especially since Mims was the only eyewitness to the buys.

The prosecutor also argued Mims told the truth about buying guns from defendant a second time because "Gary Spears didn't show up . . . He could have bought the gun from anyone. . . .  There's absolutely no reason for [Mims] to say it's [defendant].  He said it was [defendant] because [defendant], White Boy, showed up."  The prosecutor further contended Mims' compensation was not contingent on who sold him a gun and there was "no reason for him to say that it was defendant."  According to defendant, the State's argument that Mims "had 'no reason' to lie about who sold the guns completely overlooks" the financial incentives provided to Mims.

Defendant further cites the prosecutor's improper bolstering by the comment on Mims' testimony that it was defendant speaking on the recordings of the buys.  The prosecutor asserted:  "These recordings are not going to lie to you.  And you don't have to take Mr. Mims' word as to who was on those recordings.  You can take the word of the recordings."

As a general principle, it is improper for a prosecutor to convey their personal opinion to a jury. State v. Michaels, 264 N.J. Super. 579, 640 (App. Div. 1993) (citations omitted), aff'd, 136 N.J. 299 (1994). Thus, a prosecutor's personal opinion in summation bolstering the credibility of a witness may constitute error. See Farrell, 61 N.J. at 105; see also State v. Rivera, 437 N.J. Super. 434, 449 (App. Div. 2014) ("Our Supreme Court has consistently condemned conduct that invades the exclusive province of the jury to resolve factual disputes, assess credibility and decide whether the State's evidence establishes guilt."). But a prosecutor "[is] afforded considerable leeway" in summation "if their comments are reasonably related to the scope of the evidence before the jury." State v. Harris, 141 N.J. 525, 559 (1995). In doing so, a prosecutor "[is] expected to make vigorous and forceful . . . argument to the jury." Id.

Here, the prosecutor's unobjected-to remarks do not warrant reversal of defendant's conviction. The prosecutor's bolstering of Mims' credibility was in direct response to defendant's attempt to impeach Mims' testimony by questioning the financial incentives he received as a CI and calling Mims manipulative. As pronounced in State v. Frost, 158 N.J. 76, 82 (1999), this was appropriate and expected; the State rebutted defendant's impeachment attempt

10

to persuade the jury that Mims' testimony was credible. Faced with opposing views of Mims' credibility, the jury sided with the State's version. The prosecutor's bolstering remarks were not clearly capable of producing an unjust result. So, there is no reason to upset the jury's verdict.

### III.

In the event his conviction is not vacated, defendant contends a remand for a full resentencing is required because, in imposing two five-year consecutive sentences, the trial judge failed to comply with State v. Yarbough, 100 N.J. 627 (1985), and Torres. We disagree regarding Yarbough but agree as to a limited remand to comply with Torres.

Defendant argues the judge's oral decision "ma[king] a fleeting reference to [Yarbough]" was inadequate. The judge stated:

> The first transaction was a part of a conspiracy with Gyampo, while the second sale was conducted solely by defendant. Further, the transactions involve two different guns, one a loaded assault rifle, the other a defaced handgun, and it was sold over two months apart. The transactions constitute separate instances of criminal conduct, rather than [a] single period of abhorrent behavior and the convictions for which the sentences are to be included, are numerous.

While not comprehensive, we conclude the judge's reasoning for imposing consecutive sentences was adequate. See State v. Miller, 205 N.J. 109, 129

(2011) (holding a remand is required when the trial judge fails state its reasons for imposing consecutive sentences).

After defendant was sentenced, our Supreme Court decided Torres, holding: "An explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding . . . is essential to a proper Yarbough sentencing assessment." 246 N.J. at 268. We might assume that by imposing the minimum five-year consecutive sentence on second-degree offenses (defendant incorrectly asserts the maximum sentence was imposed), the judge was implicitly considering the overall fairness of the sentence imposed. The judge, however, did not explicitly state the overall fairness of a sentence per Torres. Hence, as the State concedes, we vacate defendant's consecutive sentences and remand for the judge to comply with Torres.

As for the scope of the remand, defendant argues it should be a full resentencing, wherein the judge would "view [him] as he stands before the court on that day." State v. Randolph, 210 N.J. 330, 354 (2012). Torres does not, as defendant contends, require a full resentencing. The judge's sole error was not explaining the overall fairness of imposing consecutive sentences. See Torres, 246 N.J. at 271. We have no issue with the judge's consideration of the

sentencing factors or explanation for imposing consecutive sentences. See id. at 272. On remand, the judge should only determine whether the overall fairness of the consecutive sentences. See Randolph, 210 N.J. at 354 (concluding the trial court should not conduct a full resentencing on remand where it is ordered to correct "a plainly technical error" or where an appellate court issues "a directive to the judge to view the particular sentencing issue from the vantage point of the original sentencing"). We take no position as to whether the court should impose consecutive sentences.

To the extent that we have not addressed defendant's remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed as to defendant's convictions and reversed and remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2807-20