827 A.2d 1087 (2003)
362 N.J. Super. 229
STATE of New Jersey, Plaintiff-Respondent,
v.
Peter THOMAS a.k.a. Isaac Thomas, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 2, 2003.
Decided July 3, 2003.
*1089 Peter Thomas, appellant pro se.
Edward J. DeFazio, Hudson County Prosecutor, for respondent (Susan B. Gyss, Assistant Prosecutor, on the brief).
Before Judges WEFING, LISA and FUENTES.
*1088 The opinion of the court was delivered by LISA, J.A.D.
We consider in this appeal whether defendant, Peter Thomas, was wrongfully denied his right to represent himself in a criminal trial. We conclude he was; we vacate his conviction and remand for a new trial.
After a trial by jury, defendant was convicted of all five counts of the indictment, which charged him with various drug offenses arising out of a single incident. The judge merged the first four counts with count five, third-degree distribution of a controlled dangerous substance (CDS) within a school zone, N.J.S.A. 2C:35-7, on which the judge sentenced defendant as a persistent offender, N.J.S.A. 2C:44-3a, to an extended term of seven years imprisonment with a three year parole disqualifier.
Defendant was represented by counsel in the trial court. About six weeks before trial, defendant filed a written motion to relieve his attorney and to be allowed to represent himself. After several hearings at which the judge addressed the issue with defendant, his attorney and the prosecutor, the judge denied the motion. On appeal, defendant moved before us for leave to conduct his appeal pro se. We remanded the matter to the trial court for the limited purpose of determining whether defendant's waiver of the right to counsel on appeal was knowing, voluntary and intelligent. State v. Coon, 314 N.J.Super. 426, 440, 715 A.2d 326 (App.Div.), certif. denied, 157 N.J. 543, 724 A.2d 802 (1998). A different judge conducted this hearing and concluded defendant satisfied the waiver standard. Accordingly, defendant has represented himself on appeal. He raises the following arguments.
POINT I
TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION FOR WAIVER OF COUNSEL AND TO PROCEED PRO SE VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION REQUIRING REVERSAL.
POINT II
THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR IN DENYING DEFENDANT'S MOTION FOR INDEPENDENT FINGERPRINT EXAMINATION OF EVIDENCE.
POINT III
THE TRIAL COURT COMMITTED PLAIN ERROR AND INFRINGED UPON DEFENDANT'S CONSTITUTIONAL RIGHTS BY DENYING DEFENDANT'S REQUEST TO HAVE ENVELOPE INDEPENDENTLY TESTED AFTER DEFENDANT RAISED QUESTION AS TO THE EXACT NATURE & COMPOSITION OF TRACE SUBSTANCE.
POINT IV *1090 DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE SHOULD HAVE BEEN GRANTED BY THE TRIAL COURT BECAUSE PROBABLE CAUSE DID NOT EXIST PRIOR TO THE SEARCH AND SEIZURE IN THIS CASE.
POINT V
DEFENDANT WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO CONFRONT WITNESSES AND TO DUE PROCESS WHEN STATE FAILED TO PRODUCE IN COURT OFFICERS KANG AND SARAO, AND THE MONEY CONFISCATED FROM DEFENDANT AT TIME OF ARREST. (Not Raised Below)
POINT VI
DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY AN IMPARTIAL JURY WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO DECLARE A MISTRIAL SUA SPONTE OR TO TAKE ANY CURATIVE ACTIONS AFTER TWO JURORS HAD WALKED INTO COURTROOM AND OVERHEARD STATEMENTS REGARDING DEFENDANT'S HAVING A CRIMINAL RECORD. (Not Raised Below)
POINT VII
DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL. (Partially Raised Below)
POINT VIII
IN THE INTEREST OF JUSTICE AND FUNDAMENTAL FAIRNESS, THE JUDGMENT OF CONVICTION SHOULD BE VACATED AND THE INDICTMENT IN THIS CASE SHOULD BE DISMISSED IN VIEW OF THE MAGNITUDE OF CONSTITUTIONAL VIOLATIONS AND PREJUDICIAL HARM SUFFERED BY THE DEFENDANT IN THIS MATTER. (Not Raised Below)
We agree with Point I, that the trial judge erred in denying defendant's self-representation motion. We vacate defendant's judgment of conviction and remand for a new trial. Because of this disposition, Points V, VI and VII, alleging trial errors and ineffective assistance of counsel, are moot and we do not address them. Point VIII is rejected, as it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We will address the motions referred to in Points II, III and IV at the end of this opinion.

I
The State's trial evidence established that defendant sold a baggie of heroin to Sonia Aviles within 1000 feet of school property. Jersey City police officers, who were engaged in a surveillance operation, observed the transaction at about 9:30 p.m. in a well lit area. Three or four men and a woman were standing in a group. A large truck pulled up and Aviles exited it. One of the men in the group, later identified as defendant, interacted with Aviles, receiving currency from her and handing her "a small white object approximately one inch by one-and-a-half inch square."
Aviles returned to the truck, got in the passenger side, and it was then driven away by her husband. Police kept defendant under surveillance and saw him enter a nearby grocery store. Other officers followed and stopped the truck. They arrested Aviles, who appeared to be under the influence of narcotics. The officers found in the passenger side of the truck an empty baggie, ripped and containing residue, labeled with a "Monster" logo. Police arrested defendant in the grocery store. On his person they found a brown bag *1091 containing twenty-four glassine baggies of suspected heroin bearing a "No Mercy" logo and $98 in currency.
The residue on the spent baggie seized from Aviles and the substance in the baggies seized from defendant tested positive for heroin. Defense counsel called Aviles as a witness. She had previously pled guilty to the possession of CDS charge against her. She testified she had never seen defendant nor purchased heroin from him. She stated she had made purchases of heroin from another individual at a different location on the date of the incident.
The underlying incident occurred on June 14, 2000. The indictment was returned on September 13, 2000. The case was pre-tried on January 22, 2001, when a pre-trial memorandum was completed, scheduling the case for trial on February 26, 2001. R. 3:9-1(e). We have not been furnished with a transcript of the pre-trial conference, but defendant contends he then raised the issue of his dissatisfaction with his attorney's intended trial strategy and trial preparation. Defendant believed, for example, that a suppression motion should have been filed. Shortly after the pre-trial conference, defendant filed a series of pro se written motions: (1) to suppress evidence and return property, (2) for waiver of counsel and self-representation, (3) for fingerprint examination of the baggies allegedly seized from him, (4) for a Wade[1] hearing, and (5) another suppression motion (to include evidence seized from Aviles).
The judge addressed the waiver of counsel motion on four separate occasions: February 20, 2001, February 26, 2001, February 27, 2001 and March 12, 2001. Each time defendant, his attorney and the prosecutor were present. The judge discussed the other motions on some of these occasions. On February 27, 2001, defendant orally moved to authorize independent laboratory analysis of the trace substance on the baggie seized from Aviles. On each of the first three occasions, the judge reserved decision on the waiver of counsel motion, counseling defendant against it and urging him to continue thinking about whether he wished to pursue it. On March 12, 2001, the judge denied the waiver of counsel motion and directed that the trial begin the following day. Defendant's other motions were also denied. On March 12, 2001, defendant moved for a stay of the order denying him self-representation pending appeal. He clearly stated his intention to appeal the order. The motion for a stay was denied. The trial proceeded on March 13, 14, 15 and 16, when the jury returned its verdict.

II
In 1975, the United States Supreme Court first announced that the Sixth Amendment affords criminal defendants the right to represent themselves in state prosecutions if they voluntarily and intelligently elect to do so. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We have summarized the waiver procedure as follows:
A defendant can exercise the right to self-representation only by first knowingly and intelligently waiving his right to counsel. McKaskle v. Wiggins, 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122, 130 (1984); State v. Crisafi, 128 N.J. 499, 509, 608 A.2d 317 (1992). However, because of the importance of trial counsel to the criminal justice process, the courts must indulge in every reasonable presumption against waiver. State v. Gallagher, 274 N.J.Super. 285, 295, 644 A.2d 103 (App.Div.1994).

*1092 In Crisafi, our Supreme Court set forth the areas of inquiry that a trial judge must explore to determine whether a defendant has made a knowing and voluntary waiver. The defendant should be advised of the: (1) dangers and disadvantages of self-representation; (2) nature of the charges against him, the statutory defenses to those charges, and the possible range of punishment; (3) technical problems he may encounter in acting as his own counsel and of the risks he takes if the defense is unsuccessful; (4) necessity that he conduct his defense in accordance with the relevant rules of criminal procedure and evidence, that a lack of knowledge of the law may impair his ability to defend himself, and that his dual role as attorney and accused might hamper the effectiveness of his defense; and (5) difficulties in acting as his own counsel and the court should specifically advise the defendant that it would be unwise not to accept the assistance of counsel. Crisafi, supra, 128 N.J. at 510-12, 608 A.2d 317. "The purpose of giving a defendant an extensive warning is to ensure that he or she understands the consequences of the waiver," and thus, "the ultimate focus must be on the defendant's actual understanding of the waiver of counsel," not just the judge's strict compliance with the requirements. Id. at 512, 608 A.2d 317.

[State v. Ortisi, 308 N.J.Super. 573, 587-88, 706 A.2d 300 (App.Div.), certif. denied, 156 N.J. 383, 718 A.2d 1212 (1998).]
Waiver of the right to counsel "depends in each case `upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378, 385 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)). The judge must therefore consider the nature of the charges, including their seriousness and the complexity of the anticipated trial evidence and issues, as well as the background, demonstrated demeanor and goals of the defendant.
Over the course of the four court sessions in which the issue was discussed, the trial judge explored these topics with defendant and substantially discussed with defendant the five Faretta factors. The record discloses that defendant has obtained a General Equivalency Diploma and taken about one year of college courses. He has worked as a paralegal in the law library in the prison system. Defendant has incurred fifteen prior convictions and was sentenced to several periods of incarceration. Defendant once represented himself in municipal court in the mid-eighties and won an acquittal on criminal trespass and theft charges. He cross-examined witnesses in that proceeding.
In the prison system, defendant has served as court line substitute counsel, representing prisoners in disciplinary hearings before a hearing officer. As a paralegal in the county jail he assisted prisoners in filing motions. Although he has never personally participated in selecting a jury, he has familiarized himself with the court rules pertaining to the process. He expressed his understanding of the scope and permissible parameters of an opening statement. He expressed his understanding that evidence must be presented through the testimony of witnesses and physical items admitted into evidence. He acknowledged he could not "testify" in his opening or closing or in the form of questions he posed to witnesses. He assured the judge: "Your Honor I'll stick to the facts in my cross-examination." When the judge cautioned defendant about the *1093 need to abide by the rules of evidence and rules of court, stating they get "thicker every year," defendant replied, "I have them." When the judge commented to defendant that he could testify at trial, defendant demonstrated a keen awareness of the pitfall that would result. He immediately replied, "No. I couldn't testify. If I testified, I'd be convicted on my record alone."
In the face of substantial evidence of defendant's guilt, the trial judge correctly cautioned defendant about the perils of self-representation, the benefits of representation by experienced counsel, and the serious consequences he faced if convicted. The judge explained several times that defendant faced a potential extended term sentence of ten years imprisonment with a five year parole disqualifier, and, if convicted of the school zone offense, any sentence imposed must include at least a three-year parole disqualifier.
The judge explored with defendant his goals in self-representation, and why he did not wish to continue with counsel. Defendant disagreed with his attorney regarding trial strategy and felt his attorney did not file appropriate pre-trial motions or adequately prepare for trial. Therefore, defendant believed he would be better served by representing himself. He never asked for the appointment of substitute counsel. The judge was understandably concerned that defendant's apparent strategy had some difficulties. In light of the State's evidence, however, any strategy would have some difficulties.
Throughout the four court sessions at which the subject was discussed, the judge continually cautioned defendant about the perils of self-representation and counseled him against it. This was appropriate. State v. Crisafi, 128 N.J. 499, 512, 608 A.2d 317 (1992) (citing United States v. Moya-Gomez, 860 F.2d 706, 733 (7th Cir. 1988), cert. denied, sub. nom. Estevez v. United States, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989)). However, defendant never wavered in his resolve to represent himself.
At the conclusion of the first court session, the judge declined to rule on the motion. At the second session, the first six pages of the transcript reflect discussion of other issues. Defendant then interjected, "Your Honor, I still want to know about my motion to waive counsel, represent myself." The judge replied, "I'm considering it, I'm considering it. I'm not likely to grant it." After several pages of discussion of other matters, defendant again interjected, "Your Honor, if I may, I don't understand why I'm forced to continue to be represented by [counsel] since last month. I basically fired [counsel] on, I think, January 24th. And since that time, I've file[d] a motion to represent myself." He then stated, "I know I could represent myself more fully and more fairly than I'm being represented at this time."
At this point, defense counsel suggested to the judge that if defendant's self-representation motion were granted, he could serve as standby counsel: "If you grant his motion, I'll sit here and I will take notes, and I will offer whatever advice I can to Mr. Thomas." He continued, "then Mr. Thomas is the one who will be making the objections, making legal arguments, selecting the jury. I will be there to answer his technical questions and possibly aid in his defense by maybe suggesting certain strategies." The judge continued to reserve decision and did not act on the standby counsel suggestion.
At the third court session, defendant remained steadfast: "Excuse me, your Honor. I would just like to be allowed the opportunity to represent myself." The judge stated that the right is not absolute, *1094 to which defendant replied, "It's not absolute, but if I make it knowing the dangers. I know it's not absolute, but it's constitutional, unless there's a reason why you should deny it. I don't see one." At this session, defendant mentioned in the course of the colloquy that he had a serious medical condition. The judge expressed concern about the effect on his condition the stress of self-representation might cause. Defendant did not flinch: "Yes, but your Honor, I didn't see anything in the law that denies me to represent myself because of the disability." The judge again reserved decision, urging defendant to "think about it some more," and expressing "[m]y inclination today is not to permit you, Mr. Thomas, to represent yourself. I think it would be very detrimental to your legal rights and your responsibilities." The judge was convinced defendant would have a better chance at trial if represented by counsel.
At the fourth session, on March 12, 2001, the judge denied defendant's self-representation motion. The judge concluded that although defendant was intelligent, concerned with his own welfare, well-spoken and polite, he did not have a sufficient understanding of the legal issues to be "capable of adequately representing himself." The judge further found that based on the filing of some motions deemed baseless, self-representation would impose an "undue burden on the Court." The judge concluded:
But I'm quite satisfied that it would be very unwise for me to permit Mr. Thomas to act as his own counsel, and I don't think that his waiver is knowing. I don't think he understands what he's giving up. I think he thinks he understands, but his conduct has demonstrated to me that he really does not.
And his conduct in filing motions where he thinks he understands things but he doesn't really understand them suggests to me that he is not capable of making a knowing waiver at this point and that he's doing it for all the wrong reasons. So I'm going to deny that motion.
When it was apparent this session was about to end, defendant interjected, "I'm requesting a stay of your decision of me representing myself pending appeal." The judge denied the motion, and defendant commented, "Your Honor, I'd like to let you know I want to appeal your decision."

III
Defendant's assertion of his right to self-representation was timely made, about six weeks prior to trial. He never requested a trial postponement. There was no attempt to delay. Nor did defendant's demeanor in any way suggest he might be disruptive if representing himself, a factor the trial judge recognized. See, e.g., State v. Gallagher, 274 N.J.Super. 285, 297, 644 A.2d 103 (App.Div.1994). Defendant demonstrated a complete appreciation of the difficulties of self-representation, the nature and seriousness of the charges and the potential consequences he faced. Notwithstanding the judge's diligent Crisafi colloquy over several court sessions, defendant remained adamant in his desire to represent himself. His assertion of the right was absolutely unequivocal.
On appeal, the State advances four arguments: (1) appellant sought to delay his case by seeking self-representation on the eve of trial; (2) defendant played a cat-and-mouse game with the court; (3) a court has a right to prevent self-representation to allow an orderly proceeding of a criminal trial because a criminal trial is of public interest; and (4) the record supports the judge's finding that defendant's attempted waiver of counsel was not knowing or intelligent. In support of the first three arguments, the State relies on three *1095 cases, Jermyn v. Horn, 266 F.3d 257 (3d Cir.2001), Buhl v. Cooksey, 233 F.3d 783 (3d Cir.2000), and Ortisi, supra, 308 N.J.Super. at 573, 706 A.2d 300. We find these arguments unpersuasive.
In Jermyn, the trial court found defendant legally incompetent to represent himself when he made the request at mid-trial. 266 F.3d at 289. At trial, defendant raised the insanity defense to a murder charge for matricide. Id. at 268. In the midst of trial, defendant sought to remove his attorney and represent himself. Id. at 289. The trial judge denied the request because it would disrupt the proceedings and because the mental instability of the defendant impaired his ability to make his decision knowingly. Id. at 290. This is clearly not the case here.
In Buhl, defendant asserted his right to self-representation first in a written motion to dismiss on December 20, 1990, then orally on February 25, 1991 on the day jury selection was scheduled to begin. 233 F.3d at 787-88. The trial court denied both motions. Ibid. We affirmed, State v. Buhl, 269 N.J.Super. 344, 635 A.2d 562 (App.Div.), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994), and the U.S. District denied habeas relief. Buhl v. Cooksey, supra, 233 F.3d at 786-87. The Third Circuit reversed, noting that "[t]he trial was not in progress when [defendant] attempted to waive counsel and conduct his own defense, or when he subsequently renewed that effort prior to jury selection." Id. at 797. This holding is clearly contrary to the State's position. The trial judge did not ground denial of defendant's motion on untimeliness or attempt to delay, and the timing of the request is only one factor that a court must consider in ruling on a motion to proceed pro se. See id. at 795; Government of the Virgin Islands v. James, 934 F.2d 468 (3d Cir.1991) (finding valid a request to dismiss lawyer and proceed pro se made before jury selection on the day of trial); Government of the Virgin Islands v. Charles, 72 F.3d 401 (3d Cir.1995)(validating a request made the day before trial began).
The State's reliance on Ortisi is also unavailing. We held there that a defendant cannot be deceptive with the court by "wavering between assigned counsel and self-representation and `by asserting violations of his right to counsel while rejecting every attorney assigned to his case.'" 308 N.J.Super. at 589, 706 A.2d 300 (citing Crisafi, supra, 128 N.J. at 517, 608 A.2d 317). Our Supreme Court made a similar finding in State v. Crisafi, supra, 128 N.J. at 518, 608 A.2d 317. In Crisafi and Ortisi, the defendants had a tortuous history with several appointed attorneys and the court finally allowed self-representation with an appointed stand-by counsel. 128 N.J. at 505-06, 608 A.2d 317; 308 N.J.Super. at 582, 706 A.2d 300. That is not the case here. Defendant did not repeatedly change attorneys. He had only one attorney and clearly and repeatedly voiced his intention to proceed pro se without ever requesting the appointment of substitute counsel.
We reject the State's argument that defendant was properly denied self-representation because of the need of an orderly proceeding at trial. We note that "a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation." U.S. v. Goldberg, 67 F.3d 1092, 1098 (3d Cir. 1995) (quoting United States v. Rankin, 779 F.2d 956 (3rd Cir.1986)). The charges are uncomplicated and arise from a discrete event. The issues at trial and the anticipated trial evidence would be relatively straightforward. This is a single-defendant case. In any event, the State fails to show how this particular defendant would in any way create a disorderly proceeding, *1096 although the trial might move a bit more slowly. Indeed, the trial court found defendant's behavior and demeanor quite proper.
Finally, the record does not support the State's position and the trial judge's finding that defendant's waiver request was not knowing or intelligent. That position conflicts with the sweeping principle expounded in Faretta, where the Court stated:
It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of" that respect for the individual which is the lifeblood of the law."

[Faretta v. California, supra, 422 U.S. at 834, 95 S.Ct. at 2540-41, 45 L.Ed.2d at 581 (citation omitted).]
The trial judge expressed concern that defendant's tactical disagreement with his attorney, such as defendant's intention to not call Aviles as a witness or to claim lack of possession completely, might be unwise. That, however, is not the controlling standard. We are bound by the "voluntarily, knowingly, and intelligently" standard. If defendants "chose to represent themselves and, after reasonable opportunities afforded by the court, chose tactics that left them poorly prepared to defend, that was their choice to make." United States v. Flewitt, 874 F.2d 669, 673 (9th Cir.1989).
The record clearly reveals that defendant was a "court-wise criminal who fully appreciated the risks of proceeding without counsel, and that he decided to proceed pro se with his eyes open." State v. Crisafi, supra, 128 N.J. at 513, 608 A.2d 317 (citing Faretta v. California, supra, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582). "Defendant's background and experience support the conclusion that he knew the pitfalls of trying his own case." Ibid. (citing Johnson v. Zerbst, supra, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466).

IV
Trial judges should treat waiver of counsel requests with skepticism and circumspection. They should be wary of defendants who are attempting to manipulate the orderly administration of criminal justice by hedging their positions, attempting to delay, seeking to disrupt, or using any other means. And, of course, judges must engage in the thorough and probing inquiry as required by Faretta and Crisafi to guard against such improper motives and to assure that the waiver request is voluntary, knowing and intelligent. The inquiry here was adequate, but defendant's response to it does not support the conclusion reached by the trial judge. Further, it is clear to us that defendant was not attempting to manipulate the system. He was sincere in his motives, and his conduct and proposed course of action did not forecast *1097 delay, disruption or other adverse impact on the criminal justice system.
The trial judge scrupulously endeavored to protect defendant's rights and advance his best interests. This is abundantly clear. We have no quarrel with the judge's conclusion that defendant would be better served by representation by capable, experienced counsel. This analysis and conclusion, however, misses the point. In reviewing the matter, we too are tempted to follow a similar rationale and invoke the harmless error doctrine, for defendant was well-represented, the proofs against him were substantial, and the jury's finding is amply supported by the trial record. But this we cannot do. The Third Circuit Court of Appeals explained why:
Our analysis here is driven by the legal principles that arise from Faretta. We are not called upon to assess the quality or quantity of the evidence.
Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless. McKaskle [v. Wiggins], 465 U.S. [168], 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).
....
That denial [of the right of self-representation] was not merely a "trial error;" rather, it was a "structural defect [that] affect[ed] the framework within which the trial proceed[ed]." Arizona v. Fulminante, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). "The existence of such defects ... requires automatic reversal of the conviction because they infect the entire trial process." Brecht v. Abrahamson, 507 U.S. 619, 629-630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (employing the categorization used previously by the Court in Arizona v. Fulminante, contrasting "trial errors" with "structural defects in the constitution of trial analysis").
If a defendant seeks to represent himself and the court ... denies ... his request[ ], the government is not entitled to an affirmance of the conviction it subsequently obtains. To the contrary, the defendant is entitled to reversal and an opportunity to make an informed and knowing choice.

[United States v. Hernandez, 203 F.3d 614, 625 (9th Cir.2000).]
[Buhl v. Cooksey, supra, 233 F.3d at 806.]
We are constrained to reverse and remand for a new trial. On remand, assuming defendant asserts his right to self-representation and is found after an appropriate Faretta/Crisafi inquiry to meet the required standard, he should proceed pro se in the retrial. Id. at 807 n. 25. The decision whether to appoint standby counsel rests in the sound discretion of the trial judge. McKaskle v. Wiggins, 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122, 137 (1984).

V
Finally, we address the motions addressed in Points II, III and IV of defendant's appellate brief. The trial judge denied the suppression motions for the sole reason that they were not filed by counsel. This was after defendant asserted his right to self-representation. Disposition of the other motions was tainted by defense counsel's assertion to the trial judge that they lacked merit and were contrary to the strategy counsel intended to employ at trial. Therefore, on remand, defendant should have reasonable opportunity to file *1098 pre-trial motions and have them decided on the merits.
Reversed and remanded.
NOTES
[1] United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).