# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1480-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RICHARD R. LEONCINI,

    Defendant-Appellant.

_____

Submitted April 27, 2020 – Decided July 24, 2020

Before Judges Sabatino and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 14-07-0697.

Schwartz, Hanna & Olsen, PC, attorneys for appellant (Andrew Robert Burroughs and Christopher George Olsen, on the briefs).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Richard R. Leoncini appeals the Law Division order denying him post-conviction relief (PCR) following an evidentiary hearing. Having reviewed the record considering the applicable legal standards, we affirm.

I

The underlying trial evidence and procedural history are detailed in our unpublished decision affirming defendant's conviction and sentence on direct appeal, State v. Leoncini, No. A-5526-14T1 (App. Div. Mar. 1, 2017), and in the PCR court's nine-page written decision. We incorporate both by reference here; thus, a brief summary will suffice.

In the early evening of February 1, 2014, defendant was driving on Route 206 in Mansfield Township when he made an illegal U-turn. Mansfield Police Detective Daniel Ehnstrom, who was driving a marked patrol vehicle in the opposite direction, saw the violation and turned around to pull over defendant's vehicle. Despite Ehnstrom's activation of his patrol car's emergency lights, air horn, and siren, defendant did not stop and continued at a high rate of speed. At various points after turning onto other roadways, with Ehnstrom still in pursuit, defendant swerved between lanes, drove through red lights, and veered into a lane of oncoming traffic. When Ehnstrom was able to drive alongside

defendant's vehicle, defendant waved at Ehnstrom, which Ehnstrom believed was a request to "to pull up next to him." Fearing defendant who appeared to be wearing military camouflage clothing was headed to Fort Dix military base, Ehnstrom radioed dispatch to alert the base's security personnel of a possible "terrorist or some other concern."

Defendant eventually stopped at the dead-end of the Fort Dix entrance and security checkpoint where a temporary barricade had been constructed manned by ten or twelve security officers. Defendant was arrested without incident after getting out of his car. In the ensuing investigation, Ehnstrom learned defendant was at the security checkpoint earlier that evening and left without retrieving his driver's license and wallet from security officers who asked to see his identification when he claimed he was at the base to help American soldiers.

Defendant was charged with several motor vehicle violations and indicted for the sole count of second-degree eluding, N.J.S.A. 2C: 29-2(b). In light of defendant's history of mental illness, there was concern about competency to stand trial. Following a competency hearing on the trial's eve, the trial court determined defendant was competent to stand trial.

At trial defendant testified he was going back to Fort Dix, because the military security had kept his driver's license when he went there earlier that

evening to offer his help after watching television news reports about American soldiers being wounded overseas. Defendant stated he thought Ehnstrom was escorting him to Fort Dix as a result of his 4-1-1 or 9-1-1 call asking for "back-up," and did not want to pull over because he did not have his driver's license. The jury found defendant guilty of second-degree eluding. The court later sentenced him to a downgraded third-degree three-year prison term, with no parole disqualifier, and ordered to receive further mental health treatment.

Defendant appealed his conviction and sentence. In an unpublished decision, we affirmed both. Leoncini, slip op. at 1-2. We rejected defendant's contentions the trial court should have reevaluated his competency to stand trial because his mental state declined since the outset of his trial. Id. at 17-18, 29. We also found the court properly balanced the aggravating and mitigating factors in downgrading defendant's sentence in the face of the State's demand for a longer second-degree term. Id. at 30-31. The Supreme Court denied defendant's petition for certification. State v. Leoncini, 203 N.J. 572 (2017).

II

Shortly after the Supreme Court refused to consider his appeal, defendant filed a self-represented PCR petition. He was subsequently assigned counsel. The petition alleged trial counsel provided ineffective assistance of counsel by

A-1480-18T1

failing to investigate and assert an insanity or diminished capacity defense. The same court which presided over defendant's trial, conducted oral argument on the PCR claim and decided an evidentiary hearing was appropriate because defendant established a prima facie PCR claim.

On the morning the hearing was to commence, the court entertained defendant's motion – filed the day before – to represent himself during the evidentiary hearing. After questioning defendant regarding his educational background and understanding of the substantive and procedural law governing the proceeding, the court denied the motion.[1] In its bench decision, the court explained:

> [T]that based on . . . [defendant's] answers, a knowing and intelligent waiver cannot be established here. The [c]ourt finds that [defendant] would not be able to conduct his defense in accordance with the Rules of Criminal Procedure and Evidence, that a lack of knowledge may impair his ability to defend himself and that his dual role a[s] attorney and accused may hamper his effectiveness -- the effectiveness of his defense.
>
> In addition, if a new trial is granted as a result of this PCR, [defendant] indicates that he will investigate whether he is competent to proceed and if so, whether he would be not guilty by reason of insanity. This [c]ourt is reluctant to find that [defendant] is competent

---

[1] The court also denied defendant's request to seal the PCR record out of concern his medical records would become public records. The denial is not an issue on appeal.

A-1480-18T1

to represent himself in this PCR when the basis of this PCR is that trial counsel did not fully investigate whether [defendant] was fit to proceed and if so, not guilty by reason of insanity.

Defendant's trial counsel was the first witness to testify. A licensed attorney since 1975, and since he began specializing in criminal law in 2008, counsel had about nineteen criminal trials and had also represented individuals in mental competency hearings. He stated he took over defendant's defense from a prior attorney, who told him defendant did not want to assert an insanity defense. The prior attorney's file contained copies of her letters to defendant stating she would not assert such defense without his consent. To aid in developing a trial strategy, counsel stated he reviewed accounts of the incident in police reports and Ehnstrom's motor vehicle recording, as well as reviewing defendant's medical records which defendant disclosed to him. He claimed he was not aware of defendant's hospitalization for mental instability and release on December 3, 2013, about three months before the incident, because defendant never shared that information with him. Counsel claimed he saw no indication in defendant's medical records that defendant may have been mentally incompetent the night of the incident. Counsel testified he requested all the medical records defendant asked him to obtain.

6

In discussing the incident with defendant, counsel testified defendant's recollection was clear and logical and defendant claimed he honestly believed Ehnstrom was backing him up and escorting him to the base to retrieve his credentials. According to counsel, defendant advised him before trial that he did not want to pursue an insanity defense; expressing concern about his medical history becoming public if such a defense was asserted. Defendant told him he was aware he had an obligation to stop and pull over his vehicle based upon Ehnstrom's actions. Counsel testified he "was confident at the time in dealing with [defendant] that he was[:] a) able to make that kind of decision, and b) he was not under any delusions or improper recollection of what had happened on the night in question." Consequently, counsel stated "the whole essence of the defense at trial, which was based on what [defendant] told me, was that he basically made an honest mistake of judgment as opposed to not knowing what he was doing."

Counsel testified he never discussed an insanity or diminished capacity defense because defendant "made it pretty clear he didn't want an insanity defense." Counsel recalled it was not until after the jury found defendant guilty that defendant mentioned an insanity defense should have been raised, which he

wrote in his case file. Counsel's file notes of April 16, 2015 provide defendant "[n]ow wants a <u>Krol</u>"[2] hearing.

In support of his PCR claim, defendant presented the report of Dr. Kenneth J. Weiss, M.D., who conducted a competency evaluation of defendant about five months prior to the evidentiary hearing. Dr Weiss noted that prior to the incident, defendant was hospitalized six to ten times for "delusional thinking and suicidal behavior" with a "Schizoaffective Disorder" diagnosis. Based upon his review of defendant's extensive medical history, Dr. Weiss concluded "within a reasonable degree of medical certainty that there was sufficient evidence that [d]efendant was suffering from a serious mental illness at the time of the incident to support a defense of insanity or diminished capacity."

Defendant testified counsel never discussed with him the prospects of an insanity defense. About two months before the trial he had stopped taking his prescribed medication, which made him a "delusional paranoid schizophrenic," where he would "agree[] with everybody." He did not believe he told counsel he "was in in the hospital previously[.]" Defendant testified he told counsel to

_____

[2] In accordance with <u>State v. Krol</u>, 68 N.J. 236, 257 (1975), after a defendant is found to be not guilty by reason of insanity the State must prove at a hearing, whether a defendant should be released or be confined to a mental institution to receive treatment for a continuing mental illness that causes a defendant to be a potential danger to self or society.

A-1480-18T1

obtain his medical records, but counsel refused because it was too expensive. It was not until after trial that counsel got all his medical records.

The court entered an order on September 28, 2018 denying defendant's PCR claim. The court explained the reasons for its order in a written decision dated October 9, 2018. The court concluded defendant failed to satisfy the two-prong test of Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires a showing that defense counsel's performance was deficient and that, but for the deficient performance, the result would have been different. See State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

With respect to Strickland's first prong, the court found trial counsel was not ineffective for failing to investigate the possibility of asserting an insanity, N.J.S.A. 2C:4-1, or a diminished capacity defense, N.J.S.A. 2C:4-2, because it was counsel's "trial strategy and client advocacy" that defendant "was not under a mental health defect at the time of the [incident]." The court determined counsel's trial tactics were based upon counsel's review of the competency evaluation report of Dr. Peter Paul, PsyD., who opined defendant "was competent to stand trial and understood the nature and circumstances the charges against him," and discussions with defendant regarding the incident. The court

credited counsel's testimony defendant did not want to pursue an insanity defense based upon defendant's first attorney's letters in defendant's file and his own discussions with defendant. The court also credited counsel's testimony that defendant never revealed his prior hospitalization two months before the incident, nor the same "burning sensation in his brain shortly before the incident," which prompted that hospitalization. Thus, the court found counsel had no reason to seek those hospital records, and thus, rejected defendant's claim counsel was ineffective for not raising an insanity or diminished capacity defense.

As for the second Strickland prong, the court determined defendant had "not shown that there [was] a reasonable probability that, but for [counsel's] failure to investigate and request the additional hospital records, the results of his case would have been different." The court acknowledged "some of the hospital records introduced at the evidentiary hearing . . . are troubling, showing that [defendant] suffered from bouts of mental deficiency, [but] nothing in the records indicates [defendant] was experiencing these signs and symptoms at the time of the incident." In fact, the court stated the medical records provided to counsel and defendant's comments to counsel evidence defendant had stabilized when the incident occurred. The court concluded, based on "the evidence

presented to trial counsel, the facts and circumstances of [defendant's] case did not lend itself to a mental health defense."

In this appeal, defendant argues:

> POINT I
>
> DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY FAILED TO INVESTIGATE AND TO PRESENT MENTAL HEALTH DEFENSES AT TRIAL.
>
> POINT II
>
> THE COURT ERRED WHEN IT DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO PROCEED PRO SE AT THE PCR HEARING.

### III

Initially, we address defendant's Point I contention. In doing so, we first point out the charged offense in question is second-degree eluding, defined as:

> Any person, while operating a motor vehicle on any street or highway in this State . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop . . . if the flight or attempt to elude creates a risk of death or injury to any person.
>
> [N.J.S.A. 2C:29-2 (b).]

11

There is no dispute defendant's manner of driving while being pursued by Ehnstrom met the statutory standard for second-degree eluding. The jury rejected defendant's explanation that he honestly mistook Ehnstrom's actions as supporting his attempt to retrieve his credentials from the Fort Dix security officers. Defendant argues he is entitled to a new trial where he can raise a defense of insanity or diminished capacity because his trial counsel failed to do so.

"The insanity defense is 'an affirmative defense which must be proved by a preponderance of the evidence[,]' N.J.S.A. 2C:4-1, . . . [i]t is, accordingly, a defense that must be affirmatively invoked by the defendant if it is to play a role at trial." State v. Gorthy, 226 N.J. 516, 533 (2016). To succeed with an insanity defense, a defendant must prove "that the greater weight of credible evidence showed that [he or] she was not mentally capable of distinguishing right from wrong when" the offense was committed. State v. J.T., 455 N.J. Super. 176, 216 (App. Div. 2018).

A diminished capacity defense applies where a defendant (1) "has presented evidence of a mental disease or defect that interferes with cognitive ability sufficient to prevent or interfere with the formation of the requisite intent or mens rea[,]" and (2) "the record contains evidence that the claimed deficiency

did affect the defendant's cognitive capacity to form the mental state necessary for the commission of the crime." State v. Galloway, 133 N.J. 631, 647 (1993). A defendant must initially "introduce evidence of a mental disease or defect tending to show that he or she was incapable of forming the requisite intent, N.J.S.A. 2C:4-2, 'the statute does not shift the burden of proof to the defendant to disprove an essential element of the case.'" State v. Baum, 224 N.J. 147, 161 (2016) (quoting State v. Moore, 122 N.J. 420, 431 (1991)). Hence, "the burden of proof remains on the State to establish the mens rea of the offense." Ibid. (citing Moore, 122 N.J. at 431).

After the evidentiary hearing, the PCR court found counsel was not ineffective for deciding not to raise an insanity or diminished capacity defense. We agree and affirm substantially for the reasons detailed in the court's written opinion. We add the following comments.

Where, as here, the PCR court conducts an evidentiary hearing, we must uphold the court's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (internal quotation marks omitted) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Additionally, we defer to a trial court's findings when "substantially influenced by [the court's] opportunity to hear and see the

witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (internal quotation marks omitted) (quoting Robinson, 200 N.J. at 15).

The court found trial counsel was credible in asserting defendant did not want to pursue a defense to the eluding charge based on mental deficiencies. The credible evidence reflects defendant had made the same demand to his initial attorney, as reflected in her letters to defendant. In Gorthy, 226 N.J. at 536, our Supreme Court recognized a competent defendant's ultimate right to reject decisions of his attorney or the trial court to pursue an insanity defense, holding:

> Having found the defendant to be competent and explained the consequences of the defendant's decision, the trial court should respect the defendant's independent choice. A competent defendant is deemed capable of deciding whether or not to assert a defense. See N.J.S.A. 2C:4-4. His or her decision may not align with counsel's considered advice. It may not represent sound trial strategy. It constitutes, however an exercise of the defendant's autonomy.
>
> [(footnote omitted).]

Thus, we cannot conclude counsel was ineffective for raising the defense opposed by defendant. According to counsel, it was not until months after the

trial when defendant belatedly expressed to him a desire to pursue an insanity defense.

The court agreed with counsel there was no reasonable basis for counsel to question defendant's position to pursue a defense that he mistakenly believed he was being escorted back to Fort Dix, because Dr. Paul opined he was competent to stand trial and counsel's pre-trial preparation with him indicated he understood the charges he faced. As the court found, defendant did not inform counsel of his most recent hospitalization prior to the incident, which defendant contends should have made counsel aware he was suffering from his delusional condition during the incident.

We discern no reason to question counsel's trial strategy based upon defendant's competency to stand trial, the evidence available to counsel at the time, and counsel's consultation with defendant. Fritz, 105 N.J. at 54 (holding "complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . . ."); see also State v. Echols, 199 N.J. 344, 357-59 (2009) ("[A]n otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial."). Moreover, we cannot conclude counsel was

15

ineffective where the evidence suggests defendant's claim for relief is based on his second thoughts after his own initial strategy proved unsuccessful.

Although the court did not comment on the impact of Dr. Weiss's opinion defendant was not mentally competent when the incident occurred, this does not alter our view of his ruling. The court's rejection of defendant's PCR claim was based on the information available to counsel at the time of trial and defendant's refusal to pursue a defense based upon his history of mental illness. Moreover, the court was not required to blindly accept the psychologist's opinion. See Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002) (noting that "[a] trial court is free to accept or reject the testimony of either side's expert," in full or in part).

IV

Lastly, we address defendant's contention the court erred in denying his constitutional right to represent himself at the PCR evidentiary hearing. Specifically, he contends he was capable of competently representing himself to establish trial counsel "failed to investigate and present mental health defenses," but the court did not focus on this, instead concentrating on how he would "perform at a new trial." We disagree.

A defendant's right to self-representation is well settled. "[A] defendant has a constitutionally protected right to represent himself in a criminal trial." Faretta v. California, 422 U.S. 806, 816 (1975); see State v. DuBois, 189 N.J. 454, 465 (2007). However, because a waiver of the right to counsel constitutes a relinquishment of "many of the traditional benefits associated with" that right, it must be made "knowingly and intelligently." Faretta, 422 U.S. at 835. When a criminal defendant requests self-representation, the court must "engage in a searching inquiry" with him to determine whether the defendant understands the implications of the waiver. State v. Crisafi, 128 N.J. 499, 510 (1992).

In Crisafi, the Court held that a trial court must inform the defendants of "the nature of the charges against them, the statutory defenses to those charges, and the possible range of punishment." Id. at 511. The court should also tell the defendants of "the technical problems they may encounter in acting as their own counsel and of the risks they take if their defense is unsuccessful." Id. at 511-12. The defendants should be cautioned that they must conduct their defense in accordance with the relevant rules of procedure and evidence, that "a lack of knowledge of law may impair their ability to defend themselves," and that in general it may be unwise not to accept counsel's assistance. Id. at 512.

Over two decades later in State v. Reddish, 181 N.J. 553, 594 (2004), the Court expanded the Crisafi inquiry.

> [T]he Crisafi/Reddish inquiry now requires the trial court to inform a defendant asserting a right to self-representation of (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that the lack of knowledge of the law may impair defendant's ability to defend himself or herself; (5) the impact that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words; (8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.
>
> [DuBois, 189 N.J. at 468-69.]

In ascertaining whether a defendant's "knowingness" is "real or feigned," a trial court should "ask appropriate open-ended questions that will require [the] defendant to describe in his own words his understanding of the challenges that he will face . . . ." Reddish, 181 N.J. at 595.

Ultimately, the focus "must be on the defendant's actual understanding of the waiver of counsel." Crisafi, 128 N.J. at 512. All reasonable presumptions

18

against waiver should be indulged.  State v. Gallagher, 274 N.J. Super. 285, 295 (App. Div. 1994).  However, a defendant should not be deprived of the right of self-representation based solely on "the complexity of the proceedings or the magnitude of the consequences" he faces.  State v. Russo, 243 N.J. Super. 383, 401 (App. Div. 1990).

Additionally, the goal of the court's colloquy with a defendant is not to explore whether he possesses any particular "technical legal knowledge," State v. King, 210 N.J. 2, 19 (2012), and a defendant need not demonstrate "the skill and experience of a lawyer" before a knowing and voluntary waiver is found, Reddish, 181 N.J. at 595.  Finally, if the appropriate colloquy is conducted and it is determined that the defendant's waiver of counsel is knowing and voluntary, that choice "must be honored" even if the court feels it is a "poor" or "unwise" one.  Gallagher, 274 N.J. Super. at 296; State v. Thomas, 362 N.J. Super. 229, 242-43 (App. Div. 2003).

While the court at times appeared to stress defendant's lack of relevant procedural and substantive law knowledge, we are satisfied it did not abuse its discretion in denying defendant's motion to represent himself.  Our review of the transcripts in which the court conducted its inquiry reveals that, although defendant provided responses to the court's questioning, those responses were

general and superficial and did not evidence appreciation for the "fundamental legal rights and issues that will be affected by his decision." Reddish, 181 N.J. at 592. Therefore, the record fully supports the court's determination that defendant should not have been allowed to represent himself during the evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1480-18T1