**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1999-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAFAEL J. OLMO,
a/k/a RICKY OLMO,

     Defendant-Appellant.

_____

Argued September 16, 2021 – Decided October 8, 2021

Before Judges Alvarez, Haas, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 15-06-1444.

Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Zachary G. Markarian, of counsel and on the brief).

John J. Santoliquido, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Cary Shill, Acting Atlantic County Prosecutor, attorney; John J. Santoliquido, of counsel and on the brief).

PER CURIAM

Convicted by a jury, defendant Rafael J. Olmo was sentenced to substantial terms on November 2, 2018. Defendant waived his appearance during the trial and his sentence hearing; at the time, he was imprisoned for murder. Defendant appeals, and because the trial judge did not sufficiently address his motion for leave to represent himself, we reverse and remand.

The jury found defendant guilty of the following: third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count one); first-degree drug distribution, N.J.S.A. 2C:35-5(b)(1) (count two); third-degree drug possession (count three); second-degree possession with intent to distribute counterfeit CDS, N.J.S.A. 2C:35-5(a)(2) (count four); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count eight); second-degree possession of a handgun for unlawful purposes, N.J.S.A. 2C:39-4(a) (count nine); third-degree possession of CDS (count twelve); second-degree drug distribution (count thirteen); second-degree drug distribution (count fourteen); first-degree drug distribution (count fifteen); third-degree witness tampering, N.J.S.A. 2C:28-5(a)(1) (count sixteen); and third-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7 (count seventeen). The jury was unable to reach a verdict on first-degree robbery, N.J.S.A. 2C:15-1 (count

2

five); first-degree murder, N.J.S.A. 2C:11-3(a)(1)-(2) (count six); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count seven); fourth-degree possession of hollow point ammunition, N.J.S.A. 2C:39-3(f) (count ten), and first-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(b)(1) (count eleven). The State intended to retry those counts.

The judge imposed an aggregate of 116 years in state prison on defendant, subject to forty-seven-and-a-half years of parole ineligibility, which included mandatory extended terms and mandatory consecutive terms. Defendant's 116-year sentence was consecutive to the sentence of life without parole he was already serving. The facts relevant to the charges are not relevant to our decision and thus will not be repeated here.

Defendant had several indictments pending when this matter was tried. At various times, he was represented by three private attorneys and a public defender.

Defendant's difficulties with his attorneys regarding a different indictment are reflected in the record provided on this appeal. On May 16, 2014, for example, while discussing scheduling for another case, defendant accused the court of "fir[ing]" his prior attorney. On that date, counsel stated defendant wanted his oldest case tried first. The State wished to proceed out of

A-1999-18

chronological order. Defendant addressed the judge directly, asserting that he had the right to be tried on the oldest indictment first and that he would have benefitted from the 2009 case being heard before the murder case. Defendant remarked that "because we didn't [try the 2009 case first] a lot of 404 and 403 stuff came in which prejudiced my case, and I feel as though I was violated all the way through and I never got a fair trial."

On April 15, 2016, the court heard argument on various pretrial motions on another indictment. During that proceeding, defendant sought to represent himself on all pending charges. During the Crisafi/Reddish[1] colloquy, the judge elicited from defendant that he had been expelled from school in the ninth grade, obtained a GED at age sixteen, had no learning disabilities, and had been "less than honorably" discharged from the Army after a year and a half. While on parole, he worked as a barista for about a year.

Defendant told the judge he had started to read "a little bit" of the Court Rules and the Rules of Evidence. He could not recall whether he was convicted of the murder, for which he was serving life without parole, in 2012, 2013, or 2014. Defendant could name neither the charges pending against him nor their elements. He repeatedly responded to the judge's questions by saying he could

---

[1] State v. Crisafi, 128 N.J. 499 (1992); State v. Reddish, 181 N.J. 553 (2004).

answer if he had the indictments in front of him—but could not "off the top of [his] head." Defendant lacked awareness of his potential defenses, the potential sentences he faced, and the witnesses he might call in his defense. He argued that he did not know what motions he would file because he did not have the relevant discovery materials. Defendant claimed the "[f]eds" took the discovery during his 2010 arrest. He did not know how to file a motion and admitted he would have to "look in the book" to learn how.

Defendant understood that in questioning a witness or making an opening or closing statement, he could tip the jury off that he knew more than he should about the charges, creating "an inference that [he] committed [the crimes] . . . ." He also claimed he understood that if he "cross[ed] the line between acting as an attorney and acting as a witness[,]" he might "forfeit [his] right to remain silent . . . ." Defendant said he knew that by representing himself he would lose the right to raise any ineffective assistance of counsel claims. The exchange ended as follows:

> [THE COURT:] All right. Do you understand that your lack of knowledge of the law may, and probably will, impair your ability to defend yourself, and that your dual role, as counsel and accused, may hamper your effectiveness in presenting your defense.
>
> Do you understand that?

A-1999-18

[Defendant:]        Yes.

[THE COURT:]   I must advise you that a trained lawyer would be far better to defend you than you can do yourself, and I strongly urge you not to try to defend yourself without a lawyer.

Have you had enough time to think about this?

[Defendant:]        Yes.

[THE COURT:]   Is it still your desire to defend yourself?

[Defendant:]        Yes.

[THE COURT:]   Are you making your decision voluntarily and of your own free will?

[Defendant:]        Yes.

[THE COURT:]   Do you have any questions for me?

[Defendant:]        Not right now.

[THE COURT:]   Not right now?

[Defendant:]        No.

The judge ultimately found:

All right. I'm going to save you some time, because this [c]ourt is going to make the finding right now that you are not competent to represent yourself, and I am going to deny your application to represent yourself.

6

First of all, you have a limited [–] and these are things I am putting on the record for any type of review going forward. You have a limited education. You have not progressed beyond the [ninth] grade. You have a GED. You are clearly not ready for trial in this matter. What you said to the [c]ourt over and over is that, I could look it up in a book. I don't know this off the top of my head.

This is a significant trial, both the possession of a weapon trial and also, the other trials, the other indictments against you are all significant. Now, granted you are already faced [–] you are already sentenced and facing a life sentence for the murder for which you were tried and convicted. And I . . . can just see by your cavalier attitude that you have been in front of this [c]ourt time and time again, that somehow or other that you can think this is a day out of State Prison, and you can come in here with a smirk on your face and just say to the [c]ourt, well, I'm not ready. I don't want to do this; I don't want to do that.

But, be that as it may, you can smirk as much as you want, but the fact of the matter is that, I have to make sure there is a level playing field here, and I don't believe that with your experience [–] you've never observed [–] you, yourself, were tried and convicted for murder. You had a very competent attorney . . . . You've never observed any other trials. You've never had job training, other than as a [b]arista and in the [m]ilitary, and apparently, you lasted a year and a half in the [m]ilitary, and you were discharged, less than honorably [–] other than honorable.

You don't have a history of having responsible jobs at which you had to perform at a responsible level, and you had the training. You do [not] know what you are charged with. <u>You can't recount the counts of the</u>

A-1999-18

indictment.  Generally, you said you'd have to read them.

You don't know, after six years, the type of sentence that you might face, if you were convicted of this.  You say you know the concept of lesser-included offenses, but you don't know what they might be in this particular case.  The one thing that you did know is that the [p]rosecutor's burden of proof is beyond a reasonable doubt.  I suspect [counsel] said that over and over again in the trial that you were subject to.

You know that there is a book with the Rules of Evidence, but you have no familiarity with the Rules of Evidence.  You seem to understand that the [j]udge can't explain those to you and no one can help you.  But there is one thing in saying that you understand that and another thing of abiding by it.

You say you understand that by electing to proceed, you're on your own, that no one can help you with your questions or presenting evidence.  You don't know the [r]ules of [c]riminal [p]rocedure.  Again, you say you don't know of them off the top of your head.  You know where the book is.  You don't really know who you want to subpoena as witnesses in this relatively simple case, possession of a weapon; possession of a weapon for unlawful purpose; certain persons not to have weapons.

I can't even imagine the number of people that might be necessary to subpoena in the other cases that [a second counsel] is representing you.  You don't know how to subpoena witnesses.  You haven't expressed that.  You said, well, I can look it up.  After six years, perhaps, that should be something you are familiar with.

A-1999-18

You say, you probably are going to pursue motions but you don't know what they are. You don't understand how to file motions. You don't know that there are restrictions on what you can say in closing or opening. You don't know that there are restrictions on the way that you can ask questions. You don't know how you are going to testify, if you elect to do so.

You know that you have a right to remain silent, but if you become . . . your own lawyer, essentially, that right to remain silent is . . . very much impaired. And you seem to understand that in becoming your own attorney, you may impair your . . . ability to defend yourself, but I . . . just think you're . . . saying what you think you need to say to me, so that I will say that you can represent yourself. You are . . . nowhere near being qualified to represent yourself.

And for those reasons, <u>I am going to deny your motion. I will tell you, as well, you may save the paper you are going to file with respect to [the other attorney's] cases, because my results in that will be the same</u>. You're going to be represented by counsel. I am going to direct that [–] now, . . . you have two opportunities here, now, that I said that you are not going to represent yourself.

[(Emphasis added).]

Some seventeen months later, on September 15, 2017, the court heard various pretrial motions related to this indictment. When counsel reminded the court defendant had filed a pro se motion to proceed pro se, which needed to be heard, the judge said:

A-1999-18

I've already addressed that issue. In prior matters, we've addressed the issue that [defendant] is not going to be permitted to represent himself. So his motion is –

Does [defendant] have a problem? He keeps hopping up and talking to you.

[Defendant]: Do you want me to speak to her?

THE COURT: No, I don't.

[Defendant]: All right.

THE COURT: I want your attorney to speak. That's why you have an attorney.

[Defense counsel]: What [defendant] is indicating is that Your Honor did not make that finding on the super[s]eding indictment.[2] I wasn't here, Judge, so I –

THE COURT: It's the same thing. The reason he – the reason – the reasoning for not permitting him to, to go pro se on the other matters wouldn't matter if there's a super[s]eding indictment. So I just have to make it clear on the record that my finding with respect to the previous indictment applies to this indictment as well. I'm doing that right now. [Defendant] will not be permitted to proceed pro se. All right? And he can take that up to the Appellate Division if he wants to do so.

After that ruling, the judge ruled on the other pending pre-trial applications.

---

[2] Defendant was tried and now appeals under the superseding indictment.

On appeal, defendant raises the following points:

POINT I

THE DENIAL OF [DEFENDANT'S] MOTION TO PROCEED PRO SE VIOLATED HIS CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION BECAUSE HIS REQUEST WAS BOTH KNOWING AND VOLUNTARY.

A. The Court Erred in Basing Its Decision Denying [Defendant] the Right to Represent Himself On His Lack of Technical Legal Knowledge Regarding the Charges in a Separate Indictment.

B. The Court Erred in Summarily Applying Its Incorrect, Seventeen-Month-Old Ruling From a Separate Indictment to Conclude That [Defendant] Could Not Represent Himself in This Case.

POINT II

THE COURT FAILED TO INSTRUCT THE JURY THAT GONZALEZ'S TESTIMONY SHE HAD SEEN [DEFENDANT] POSSESS GUNS AND DRUGS ON UNSPECIFIED DATES IN THE PAST COULD NOT BE USED AS PROPENSITY EVIDENCE TO SUPPORT THE CONCLUSION THAT HE HAD DONE SO ON THE SPECIFIC DATES CHARGED.

POINT III

[DEFENDANT'S] CONVICTIONS FOR COUNTS EIGHT AND NINE MUST BE REVERSED BECAUSE THE COURT FAILED TO INSTRUCT THE JURY THAT IT HAD TO FIND THAT [DEFENDANT] HAD POSSESSED A WEAPON ON DECEMBER 1, 20[10].

11

<u>POINT IV</u>

THE COURT SET AN EXCESSIVE SENTENCE BY IMPERMISSIBLY SENTENCING [DEFENDANT] TO MULTIPLE MANDATORY EXTENDED TERM SENTENCES, RUNNING THEM CONSECUTIVE, AND DOUBLE-COUNTING HIS PRIOR RECORD IN AGGRAVATION.

We address only defendant's first claim of error, as this decision makes the others moot.

Both the United States and New Jersey Supreme Courts have long held "the United States Constitution and our New Jersey Constitution grant defendants charged with a criminal offense the right to have the assistance of counsel." <u>State v. King</u>, 210 N.J. 2, 16 (2012) (citing <u>U.S. Const.</u> amend. VI; <u>N.J. Const.</u> art. I, ¶ 10). "The corollary to the right of a criminal defendant to be represented by an attorney is the defendant's right to represent himself." <u>Ibid.</u> (citing <u>Faretta v. California</u>, 422 U.S. 806, 814 (1975)). "The right [of self-representation] is either respected or denied; its deprivation cannot be harmless." <u>Id.</u> at 22 (alteration in original) (quoting <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 177 n.8 (1984)). "Defendant may have been represented by a skilled attorney, the evidence against him may have been substantial, and the verdict may find strong support in the record; that matters not." <u>Ibid.</u> (citing <u>State v. Thomas</u>, 362 N.J. Super. 229, 244 (App. Div. 2003)).

A-1999-18

Our Supreme Court recently reiterated that the purpose of a Crisafi/Reddish colloquy is to ascertain whether a defendant is knowingly and voluntarily waiving the right to counsel, not to assess his or her familiarity with substantive law. State v. Outland, 245 N.J. 494, 497 (2021). The Court continued: "the goal of the colloquy is not to ascertain whether a defendant possesses technical legal knowledge." Id. at 506 (citing Faretta, 422 U.S. at 835-36). We review a trial judge's decision regarding self-representation for abuse of discretion. See State v. DuBois, 189 N.J. 454, 475 (2007).

Here, the initial colloquy appears too focused on defendant's technical knowledge. Most problematic, however, is the court's later failure to engage in a fresh Crisafi/Reddish colloquy before trial on the indictment under appeal. The court should not have merely referenced the April 15, 2016 decision. Setting aside the judge's concern on that date, that defendant lacked knowledge regarding the offenses and potential sentences, the judge should have revisited the issue seventeen months later, on September 15, 2017. Defendant's answers could well have been different, and he might have since displayed the minimal technical knowledge about his charges that might have convinced the judge he was knowledgeable enough to represent himself.

The judge should have inquired again, not because of the superseding indictment, but because the incarcerated defendant had ample time and opportunity in the intervening months to familiarize himself with his charges, his possible strategies, and legal procedure. A second colloquy may well have produced a different outcome. Defendant had the right to be asked again and demonstrate that his attempted waiver was indeed knowing, intelligent, and voluntary.

As for the initial inquiry, the judge merely asked personal background questions along with technical questions regarding the nature of the charges, statutory elements, sentencing consequences, motion practice, trial strategy, his right to remain silent, and other legal topics. She should have done more. See Outland, 245 N.J. at 507 ("[T]he trial court's colloquy fell short of that required by our jurisprudence . . . the trial court did not inform defendant of the nature and consequences of his waiver to ensure that waiver was knowing and intelligent, but rather quizzed him on a variety of criminal law topics.").

The judge's evident skepticism about defendant's good faith in making the application is understandable in light of his difficulties with several counsel. Defendant may have reinforced that skepticism by failing to participate in the interview for his presentence report on the earlier murder conviction. But the

14

judge is obligated to ensure defendant understood the potentially disastrous consequences of self-representation. See id. at 508-10. A judge must explain the nature of the charges and applicable defenses, a seemingly inherent inconsistency in the doctrine. See id. at 508-09. From a practical point of view, it seems inconsistent to inform a defendant on-the-spot about his case, and then elicit, also on-the-spot, the voluntary and intelligent nature of a waiver of a consequential constitutional right.

Nonetheless, the judge's initial inquiry was fatally flawed because the judge focused on legal topics instead of informing defendant of the meaning of his waiver. See id. at 507-08. Denying his right to represent himself seventeen months later without evaluating whether his waiver was knowing and intelligent merely compounded that first error. The judge abused her discretion, and defendant's conviction must be reversed and the matter remanded for a new trial.

As defendant suggests, "the competence necessary to make a knowing and intelligent waiver of counsel is different from the competence to conduct a defense." Reddish, 181 N.J. at 592 (citing Godinez v. Moran, 509 U.S. 389, 399 (1993)). Therefore, the "'[t]echnical legal knowledge, as such, [is] not relevant to the assessment' of whether a defendant can represent himself." Ibid. (second alteration in original) (quoting Faretta, 422 U.S. at 836). In other words,

15

"although a court should not focus on whether a pro se defendant will fare well or badly, it must ensure that he knows and understands that, by his choice, he may not do well." Ibid. That did not occur here.

Reversed and remanded for a new trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                    A-1999-18